# EXHIBIT 1

Wyatt A. Lison (SBN – 316775)
wlison@fdpklaw.com
Joseph N. Kravec, Jr. (Pro Hac to be filed)
jkravec@fdpklaw.com
**FEINSTEIN DOYLE PAYNE**
  **& KRAVEC, LLC**
429 Fourth Avenue, Suite 1300
Pittsburgh, PA 15219
Tel.: (412) 281-8400
Fax: (412) 281-1007

Daniel L. Warshaw (SBN – 185365)
dwarshaw@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Blvd., Suite 400
Sherman Oaks, CA 91403
Tel.: (818) 788-8300
Fax: (818) 788-8104

Melissa S. Weiner (Pro Hac to be filed)
mweiner@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue
Suite 2150
Minneapolis, MN 55402
Tel.: (612) 389-0600
Fax: (612) 389-0610

*ATTORNEYS FOR PLAINTIFFS
AND THE PROPOSED CLASSES*

F I L E D
ALAMEDA COUNTY

MAY 26 2021

CLERK OF THE SUPERIOR COURT
By _____

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF ALAMEDA

DENISE CLEVELAND AND LANNA
RAINWATER, on behalf of themselves and
all others similarly situated,

                 Plaintiffs,

    v.

CAMPBELL SOUP COMPANY AND
PEPPERIDGE FARM, INC.,

              Defendants.

CASE NO.: RG 21101115

**CLASS ACTION COMPLAINT FOR:**

(1) **Violation of California's Consumers
Legal Remedies Act, California Civil
Code §§ 1750,** *et seq.*

(2) **Violation of California's False
Advertising Law, Cal. Bus. Prof.
Code §§ 17500, et seq.**

(3) **Violation of California's Unfair
Competition Law, Cal. Bus. & Prof.
Code §§ 17200,** *et seq.*

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(4) **Violation of New York's General Business Law § 349**

(5) **Violation of New York's General Business Law § 350**

(6) **Restitution based on Quasi Contract/Unjust Enrichment**

(7) **Breach of Warranty**

CLASS ACTION COMPLAINT

1    Plaintiffs Denise Cleveland and Lanna Rainwater, by and through their attorneys, bring this

2    action against Defendants Campbell Soup Company and Pepperidge Farm, Inc. (collectively,

3    "Defendants") and allege as follows based upon their personal experience as to their own acts and

4    status, and based upon the investigation of their counsel, and information and belief as to all other

5    matters:

6                                    **I.   NATURE OF THE CASE**

7    1.      This is a class action on behalf of persons who purchased various flavors of

8    Defendants' Goldfish brand snack crackers[1] ("Goldfish"), which are prominently labeled as

9    containing "0g Sugars" or "0g Total Sugars" (hereinafter "0g Sugars") on the products' principal

10   display panel ("PDP"), without warning that they are "not a low calorie food," "not a reduced calorie

11   food," or "not for weight control." The U.S. Food and Drug Administration ("FDA"), tasked with

12   ensuring that food labels are not misleading, determined after fact finding that when consumers read

13   a food label that states, "0g Sugars," they reasonably expect the food to be low or significantly reduced

14   in calories. Thus, the law requires that when a food is labeled as having "0g Sugars," but it *is not* low

15   calorie or significantly reduced in calories (as reasonably expected by consumers), it must include a

16   prominent, immediately-accompanying warning that the food is "not a low calorie food," "not a

17   reduced calorie food," or "not for weight control." 21 C.F.R. § 101.60(c)(1)(iv); Cal. Health & Safety

18   Code § 110100 (adopting this and other federal food labeling regulations as the regulations in

19   California); N.Y. Comp. Codes R. & Regs. tit. 1, ch. VI, sub. ch. § 259.1(a) (adopting this and other

20   federal food labeling regulations as the regulations in New York).

21   2.      Despite the Goldfish being labeled as having "0g Sugars" and not being low calorie or

22   significantly reduced in calories, Defendants fail to include the prominent warning that the Goldfish

23   

24   [1] This action includes the following products, hereinafter referred to as ("Goldfish"): Cheddar Goldfish (Exhibit 1), Organic Cheddar Goldfish (Exhibit 2), Organic Original Goldfish (Exhibit 3), Parmesan

25   Goldfish (Exhibit 4), Princess Goldfish (Exhibit 5), Whole Grain Cheddar Goldfish (Exhibit 6), Flavor Blasted Cheesy Pizza Goldfish (Exhibit 7), Flavor Blasted Xplosive Pizza Goldfish (Exhibit 8), Baby

26   Cheddar Goldfish (Exhibit 9), Mix Cheesy Pizza + Parmesan Goldfish (Exhibit 10), Organic Parmesan Goldfish (Exhibit 11), Whole Grain XTRA Cheddar Goldfish (Exhibit 12), Colors Cheddar Goldfish

27   (Exhibit 13), Disney Mickey Mouse Goldfish (Exhibit 14), Whole Grain Colors Cheddar Goldfish (Exhibit 15), and Flavor Blasted XTRA Cheddar Goldfish (Exhibit 16).

28   

CLASS ACTION COMPLAINT

1  are not low or reduced calorie foods, or not for weight control, prominently accompanying the "0g

2  Sugars" claim. *See* Exhibits 1-16.

3      3.    The claim on the Goldfish's labels that they contain "0g Sugars" without warning that

4  the Goldfish are not low or reduced calorie foods, or not for weight control, is materially misleading

5  to Plaintiffs and other reasonable consumers, as set forth in the regulation itself:  **"Consumers may**

6  **reasonably be expected to regard terms that represent that the food contains no sugars or**

7  **sweeteners e.g., 'sugar free,' or 'no sugar,' as indicating a product which is low in calories or**

8  **significantly reduced in calories."** 21 C.F.R. § 101.60(c)(1) (emphasis added).

9      4.    Defendants materially mislead consumers with their "0g Sugars" claim despite the

10  inclusion of the calorie content.  The reason for this is simple. The average consumer cannot—and

11  should not be expected—to determine if a food is low calorie simply by looking at the calorie content.

12  This is exactly why the aforementioned language is required on labels stating they contain "0g Sugars."

13      5.    As food manufacturers, Defendants know that to be "low calorie," the FDA requires

14  that a snack food, like Goldfish, must have 40 calories or less per the reference amount customarily

15  consumed ("RACC") – a standard set by FDA regulation.  The average consumer, however, has no

16  idea there is any such thing as a RACC, let alone what a RACC is or how to find it, how to calculate

17  how many calories per RACC a food has, or that 40 calories or less per RACC is the FDA's low-

18  calorie threshold.  Nor would the average consumer know that to be reduced calorie the food must be

19  at least 25% less in calories than an appropriate reference food, and that the differential in calories

20  between the two is measured based upon the calories of each at RACC – another standard set by FDA

21  regulation.  Indeed, unbeknownst to consumers, the RACC is different for different types of foods,

22  and the serving size stated in the Nutrition Facts Panel ("NFP") on the product label need not be the

23  RACC.  Thus, merely reading the calorie statement on a label without knowing the RACC for the

24  product or the amount of calories the FDA considers to be low calorie at that RACC, the FDA standard

25  for a food to be reduced calorie or what the appropriate reference food is to determine if a food is

26  reduced calorie does not inform the average consumer whether any food is, in fact, low or reduced in

27  calories.

28

2

6.    On the other hand, food manufacturers are in the perfect position to disclose necessary information to consumers as they are required by law to know the facts about their products and the requirements for food labeling. This is why the FDA in 21 C.F.R. § 101.60(c)(1) put the onus squarely on the manufacturer (*i.e.*, Defendants), not consumers, to make these complicated calculations and to disclose to consumers on the label when a food labeled 0g sugar is low or reduced calorie, or to state that the product is not a low or reduced calorie food to avoid misleading consumers into thinking that a food is low or reduced calorie when it is not. In choosing to label Goldfish as having "0g Sugars" on their principal display panels, Defendants have subjected themselves to the regulatory requirements related to such nutrition content claims and are therefore required to make these material disclosures so that consumers can make informed choices about the food they eat. Yet, Defendants have failed to do so.

7.    Even worse, the Goldfish actually contain sugar. Indeed, 13 of 16 varieties of the Goldfish, including the most popular "Cheddar" flavor of the Goldfish, list sugar or dextrose in their ingredient lists.[2] Moreover, all varieties of Goldfish are made with wheat flour that contains small amounts of sugar.[3] Given that the Goldfish have sugar, the "0g Sugars" statement on the front label is literally false. While FDA regulations authorize the rounding sugar content down to "0" if there is 0.5g or less of sugar, Defendants are only permitted to round down on a sugar content claim outside the NFP if they otherwise comply with the "not a low calorie food," "not a reduced calorie food" or "not for weight control" warning requirements of 21 C.F.R. § 101.60(c)(1). This is because the regulation authorizing the rounding down of sugar content to "0" outside the NFP is part of the very same regulation, 21 C.F.R. § 101.60(c)(1), that requires the warning and compliance with each subpart is mandated by the express language of that regulation. Having failed to comply with those FDA

---

[2] The varieties of Goldfish listing sugar as an ingredient includes Cheddar Goldfish (Exhibit 1), Organic Cheddar Goldfish (Exhibit 2), Organic Original Goldfish (Exhibit 3), Parmesan Goldfish (Exhibit 4), Flavor Blasted Xplosive Pizza Goldfish (Exhibit 8) Baby Cheddar Goldfish (Exhibit 9), Mix Cheesy Pizza + Parmesan Goldfish (Exhibit 10), Organic Parmesan Goldfish (Exhibit 11), Whole Grain XTRA Cheddar Goldfish (Exhibit 12), Colors Cheddar Goldfish (Exhibit 13), Disney Mickey Mouse Goldfish (Exhibit 14), Whole Grain Colors Cheddar Goldfish (Exhibit 15), and Flavor Blasted XTRA Cheddar Goldfish (Exhibit 16).

[3] *See* https://fdc.nal.usda.gov/fdc-app.html#/food-details/567626/nutrients.

regulatory requirements, Defendants are not permitted to round down or otherwise make any claim on the Goldfish's labels about the sugar content (*i.e.*, a nutrient content claim) outside the NFP. *See* 21 U.S.C. §§ 343(r)(1)(A) and (r)(2)(A)(i); *see also* Sherman Law 110670 (same for California); 21 C.F.R. § 101.13(b) (nutrient content claims cannot appear on a label unless made in accordance with applicable regulations).  In other words, Defendants simply cannot have it both ways.

8.   Plaintiffs allege that Defendants' conduct violates the unlawful, unfair, and fraudulent prongs of California's Business and Professions Code §§ 17200, et seq. (the "UCL"), California's Business and Professions Code §§ 17500, et seq. (the "FAL"), the Consumers Legal Remedies Act of the California Civil Code §§ 1750, et seq. (the "CLRA"), New York's General Business Law §§ 349 and 350, and gives rise to a breach of express warranty.  Plaintiffs allege in the alternative that Defendants' conduct is grounds for restitution on the basis of quasi-contract/unjust enrichment.

9.   Plaintiffs also seek injunctive and declaratory relief based upon Defendants' conduct asserted in this Complaint.  As of the date of this Complaint, retail stores in California, New York, and throughout the United States are selling Goldfish labeled as having "0g Sugars" without warning that they are not low calorie, not reduced calorie, or not for weight control, even though applicable law requires such a warning and without the warning the Goldfish is misleadingly represented as being low or significantly reduced in calorie.  Moreover, even if Defendants elect to remove the "0g Sugars" representation from the Goldfish's labels, Defendants are not presently enjoined from putting the "0g Sugars" representation back on the Goldfish's labels at any time Defendants so decide, even if the Goldfish are not also labeled as being not low calorie, not reduced calorie, or not for weight control. Accordingly, Plaintiffs seek declaratory and injunctive relief to stop Defendants from selling Goldfish products with the "0g Sugars" claim that are not low calorie or significantly reduced in calories as long as these food products are not also prominently labeled as being "not low calorie," "not reduced calorie," or "not for weight control."

10.   Defendants' conduct alleged herein is unlawful, false and misleading in violation of the Federal Food, Drug and Cosmetic Act ("FDCA") and the regulations promulgated thereunder by the FDA, including 21 U.S.C. 403(f), (r)(1)(A) and (r)(2)(B), and 21 C.F.R. § 101.60(c)(1).  Defendants' identical conduct that violates the FDCA and the FDA regulations thereunder also violates both

4

1  California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), §§ 110670 110705, 110760,

2  110765, 110770 and 110100, N.Y. Comp. Codes R. & Regs. tit. 1, ch. VI, sub. ch. § 259.1(a), N.Y.

3  Agric. & Mkts. Law § 201.1 and § 214-b, and other applicable state laws. This identical conduct

4  serves as the sole factual basis of each state law cause of action brought by this Complaint, and

5  Plaintiffs do not seek to enforce any of the state law claims raised herein to impose on Defendants any

6  standard of conduct that exceeds that which would violate the FDCA and regulations adopted pursuant

7  thereto. Thus, Plaintiffs' state law claims are not preempted by the FDCA because Plaintiffs' claims

8  for state law violations seek to enforce the same standard of conduct required for Defendants by federal

9  law and Plaintiffs' state law claims are based upon Defendants' breach of that standard of conduct.

10  For any of Plaintiffs' state law causes of action, the allegations supporting those causes of action and

11  any forms of relief sought for those state law causes of action, Plaintiffs expressly disclaim any attempt

12  to hold Defendants to a higher standard of conduct than what is required under federal law, and do not

13  seek any form of relief based on conduct exceeding that which is required for Defendants under federal

14  law. All state law causes of action asserted in this Complaint, the allegations supporting those state

15  law causes of action asserted herein and any forms of relief sought for those state law causes of action

16  asserted herein shall be read consistent with the limitations set forth in this paragraph.

17  **II.   JURISDICTION AND VENUE**

18       11.   This Court has jurisdiction and venue pursuant to Cal. Civ. Code §§ 395.5, 410.10 and

19  1780(d) over the claims raised in this Complaint for the following reasons: (i) Defendants regularly

20  sell, advertise, market and/or distribute the Goldfish in Alameda County and throughout the State of

21  California; (ii) a substantial portion of the underlying transactions and events complained of herein

22  occurred in Alameda County; and (iii) Plaintiff Rainwater purchased Goldfish in Alameda County.

23  Attached hereto as Exhibit 17 is a declaration in compliance with Cal. Civ. Code § 1780(d).

24  **III.   THE PARTIES**

25       12.   Plaintiff Denise Cleveland is a citizen of the State of California and a resident of San

26  Bernardino County, California. From at least August 2017 and into February 2019, Ms. Cleveland

27  purchased at least the following Goldfish varieties for her grandchildren: Cheddar Goldfish, Princess

28  Goldfish, Colors Cheddar Goldfish and Baby Cheddar Goldfish. During this period of time, Ms.

Cleveland purchased the Princess Goldfish and Baby Cheddar Goldfish about once a month and purchased the Cheddar Goldfish and Colors Goldfish only occasionally. Ms. Cleveland purchased various sizes of these products from Albertsons, Walmart, Sam's Club, Ralph's, and Stater Bros. stores in San Bernardino County, California, and usually paid somewhere between $2.00 - $8.50 for the products. The Goldfish Ms. Cleveland purchased were each prominently labeled as containing "0g Sugars," but did not prominently warn that the products were not a low calorie food, not a reduced calorie food, or not for weight control. Ms. Cleveland purchased the Goldfish relying, in part, on the labeled "0g Sugars" claim that caused her to believe they were lower in calories in comparison to other similar products. Had the Goldfish that Ms. Cleveland purchased been labeled with the required warnings for foods labeled as having "0g Sugars" that are not low or reduced in calories, this would have affected Ms. Cleveland's purchasing decisions in that she would have purchased a lesser quantity of the Goldfish, and/or would have purchased other snack products that were actually low or reduced calorie. Indeed, since learning the Goldfish are not low or reduced calorie products, Ms. Cleveland stopped purchasing the Princess Goldfish, Colors Cheddar Goldfish and Baby Cheddar Goldfish, and only rarely purchases the Cheddar Goldfish.

13.    From at least August 2017 and into April 2018, Plaintiff Lanna Rainwater was a citizen of the State of California, and a resident of Alameda County, California. During the period of time when she lived in Alameda County, California, Ms. Rainwater purchased Cheddar Goldfish approximately twice a month from Safeway retail stores near her home in Alameda County, California, including at least one purchase of the Cheddar Goldfish in April 2018. Since August 2019, Plaintiff Lanna Rainwater has been a citizen of the State of New York, and a resident of Madison County, New York. From August 2019 and into December 2019, Ms. Rainwater purchased Cheddar Goldfish approximately twice a month from Tops retail stores near her home in Madison County, New York. Ms. Rainwater usually purchased the 6.6-ounce bag of Cheddar Goldfish, which she believes usually ranged in price between $3.00 and $5.00 per package. The Goldfish Ms. Rainwater purchased were each prominently labeled as containing "0g Sugars," but did not prominently warn that the products were not a low calorie food, not a reduced calorie food, or not for weight control. Ms. Rainwater purchased these Goldfish products relying, in part, on the labeled "0g Sugars" claim that caused her

6

1  to believe they were lower in calories in comparison to other similar products.  Had the Goldfish that

2  Ms. Rainwater purchased been labeled with the required warnings for foods labeled as having "0g

3  Sugars" that are not low or reduced in calories, this would have affected Ms. Rainwater's purchasing

4  decisions in that she would not have purchased the Goldfish.  Indeed, since learning the Goldfish are

5  not low or reduced calorie products, Ms. Rainwater has not purchased them.

6       14.     Defendant Pepperidge Farm, Inc. ("Pepperidge Farm") manufacturers, packages,

7  labels, advertises, markets, distributes and sells the Goldfish in California, New York and throughout

8  the United States.  Pepperidge Farm is a Connecticut corporation with its headquarters and principal

9  place of business at 595 Westport Avenue, Norwalk, Connecticut 06851.  Pepperidge Farm is

10  registered to do business in California as entity number C0403685.  Pepperidge Farm has a direct-

11  store-delivery distribution model that uses independent contractor distributors throughout the United

12  States, including in California and New York.

13       15.     Defendant Campbell Soup Company ("Campbell's"), through its wholly-owned

14  subsidiary Pepperidge Farm, manufacturers, packages, labels, advertises, markets, distributes and sells

15  the Goldfish in California, New York and throughout the United States.  Campbell's is a New Jersey

16  corporation with its headquarters and principal place of business at 1 Campbell Place, Camden, New

17  Jersey 08103.  Campbell's is registered to do business in California as entity number C0206561.

18  Campbell's noted in its 2019 SEC Form 10-K sales increases in its "snacks" portfolio, specifically due

19  to growth in sales of the Goldfish products in 2018 and 2019.  Campbell's also owns and controls the

20  trademark for the "Goldfish" brand, and responded on behalf of Pepperidge Farm to Ms. Cleveland's

21  March 13, 2019 pre-litigation demand letter under the CLRA that was sent to Campbell's and

22  Pepperidge Farm prior to commencing this action.  Moreover, Campbell's 2019 Annual Report touts

23  Pepperidge Farm as part of its "Snacks division" and Goldfish as a leading revenue generating brand

24  for Campbell's.[4]  Campbell's also controls the advertising of Goldfish.  Campbell's also directly

25  participated in the marketing strategy and advertising of Goldfish as further specified herein.

26  _____

27  [4] "In our Snacks division, we are focused on accelerating the growth of this unique and differentiated portfolio. The combination of the Pepperidge Farm and Snyder's-Lance brands provide us with a world-class portfolio and seasoned snacks leadership team. The combined brands make Campbell the

28  No. 3* snacks company in the United States. We know how to win in snacks. Pepperidge Farm has

CLASS ACTION COMPLAINT

## IV.   FACTUAL ALLEGATIONS

16.    Goldfish are extremely popular snack crackers sold nationwide.  The Goldfish are prominently labeled as containing "0g Sugars" on their PDP as shown in Exhibits 1-16, and illustrated below:





17.    A claim that a food has "0g Sugars" is a nutrient content claim, which is defined as "[a] claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36." 21 C.F.R. § 101.13(b).  Packaged foods require specific "Nutrition labeling" that is located within the NFP on a food product's packaging.  See 21

grown net sales for 19 consecutive quarters and has experienced a nearly 3-percent compound annual growth rate (CAGR) over the last three years.... With leading brands like Goldfish, ... our Snacks division has critical scale and is poised for accelerated growth."   Annual Report, p. 11 (https://investor.campbellsoupcompany.com/static-files/7fdd1232-f047-4121-ac8d-31f07c48b5d1).

8

C.F.R. § 101.9. Sugars are nutrients subject to 21 C.F.R. § 101.13(b) as they are required in nutrition labeling. See 21 C.F.R. § 101.9(c)(6)(ii). "Information that is required or permitted by 101.9 or 101.36, as applicable, to be declared in nutrition labeling, and that appears as part of the nutrition label, is not a nutrient content claim and is not subject to the requirements of this section. *If such information is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims.*" See 21 C.F.R. § 101.13(c) (emphasis added). Thus, a "0g Sugars" statement on the PDP, like the one on the Products here, is a nutrient content claim subject to the requirements for nutrient content claims.

18.    The FDCA prohibits all nutrient content claims on foods' labels or labeling, except those expressly authorized by regulation by the U.S. Secretary of Health and Human Services (or which are otherwise exempted). 21 U.S.C. §§ 343(r)(1)(A) and (r)(2)(A)(i); *see also* Sherman Law 110670 (same for California); 21 C.F.R. § 101.13(b) (nutrient content claims cannot appear on a label unless made in accordance with applicable regulations); N.Y. Comp. Codes R. & Regs. tit. 1, ch. VI, sub. ch. § 259.1(a) (adopting for New York). The FDCA specifically prohibits a statement of the absence of a nutrient except "as defined by the Secretary [of Health and Human Services] by regulation." 21 U.S.C. § 343(r)(2)(A)(ii)(I).

19.    21 C.F.R. § 101.60(c)(1) defines the use of nutrient content claims for the absence of sugar as follows (emphasis added):

(1) Use of terms **such as** "sugar free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," "trivial source of sugar," "negligible source of sugar," or "dietarily insignificant source of sugar." **Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a product which is low in calories or significantly reduced in calories.** Consequently, except as provided in paragraph (c)(2) of this section, a food may not be labeled with such terms unless:

(i) The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of sugars per labeled serving; **and**

9

(ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar;"[5] **and**

(iii)(A) It is labeled "low calorie" or "reduced calorie" or bears a relative claim of special dietary usefulness labeled in compliance with paragraphs (b)(2), (b)(3), (b)(4), or (b)(5) of this section, or, if a dietary supplement, it meets the definition in paragraph (b)(2) of this section for "low calorie" but is prohibited by §§ 101.13(b)(5) and 101.60(a)(4) from bearing the claim; or

**(B) Such term is immediately accompanied, each time it is used, by either the statement "not a reduced calorie food," "not a low calorie food," or "not for weight control."**

20.      Based on the unambiguous plain language of 21 C.F.R. § 101.60(c)(1)(iii), a reasonable consumer can expect a food labeled with a nutrient content claim "0g Sugars" to be low or significantly reduced in calories. *Id.*, § 101.60(c)(1). Therefore, in order for consumers to not be misled by a "0g Sugars" nutrient content claim as suggesting the food is a low or significantly reduced calorie food, the food must contain a prominent, immediately accompanying warning that it is not a reduced calorie food, not a low calorie food, or not for weight control. *Id.* at 101.60(c)(1)(iii).

21.      If a food labeled with a "0g Sugars" nutrient content claim does not comply with the requirements of 21 C.F.R. § 101.60(c)(1), it is misbranded. 21 U.S.C. § 343(r) (a food is misbranded if it bears a nutrient content claim unless it is used as defined by the secretary of Health and Human Services); Sherman Law § 110670 (same).

---

[5] In addition to failing to warn that the Goldfish are "not a low calorie food," "not a reduced calorie food," or "not for weight control" immediately adjacent to the "0g Sugars" claim, as explained above 12 of 16 varieties of the Goldfish list sugar as an ingredient. Since these Goldfish have sugar, they are misbranded because the labeling does not contain the statement that the sugar "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar" regarding the sugar added to the products.

22.     Further, a food is misbranded when a statement is required to be on a food's label, such as the requirement to warn that a food is not a low calorie food, not a reduced calorie food, or not for weight control, but such statement is not made prominently "with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use." 21 U.S.C. § 343(f); Sherman Law §110705 (same).

23.     Goldfish are not "low calorie" foods as set forth in 21 C.F.R. § 101.60(b)(2) and are not labeled as being "low calorie." To be "low calorie," a food with a RACC[6] of 30 grams must have 40 calories or less per RACC. 21 C.F.R. § 101.60(b)(2)(i)(B).

24.     "Snacks: All varieties, chips, pretzels, popcorn, extruded snacks, fruit and vegetable-based snacks (e.g., fruit chips), grain-based snack mixes" have a RACC of 30 grams. 21 C.F.R. § 101.12(b). Goldfish are a snack food that contain 140 calories per 30 gram serving, far greater than the 40 calories per RACC needed to meet the requirement for a "low calorie" food. *See* Exhibits 1-16.

25.     Goldfish are also not "reduced calorie" foods and are not labeled as being reduced calorie foods. *See* Exhibits 1-16. To be "reduced calorie," the food must contain at least 25% fewer calories per RACC than an appropriate reference food. *See* 21 C.F.R. § 101.60(b)(4)(i). Additionally, a food's label or labeling may bear a "reduced calorie" nutrient content claim only if "[t]he identity of the reference food and the percent (or fraction) that the calories differ between the two foods are declared in immediate proximity to the most prominent such claim" and "[q]uantitative information comparing the level of the nutrient per labeled serving size with that of the reference food that it replaces ... is declared adjacent to the most prominent claim or to the nutrition label." 21 C.F.R. § 101.60(b)(4)(ii)(A)-(B). Goldfish's labels do not reference any other food that Goldfish replace that have 25% more calories than Goldfish.

---

[6] The RACC is not necessarily the serving size manufacturers use on their labels. Frequently, manufacturers use differing serving sizes making comparing calories, sugar content, etc. between brands difficult for consumers, especially at brick-and-mortar stores.

11

26.     Indeed, competing flavored snack crackers that are not labeled as having "0g Sugars" have comparable calories based on the RACC serving size. For example, Annie's Organic Cheddar Bunnies are made of similar ingredients as Goldfish and have a similar calorie content (*i.e.*, 140 calories) per RACC, not 25% more calories per RACC.[7]

27.     Despite not being low calorie or significantly reduced calorie foods, Goldfish are labeled as containing "0g Sugars," but do not prominently warn that they "are not a low calorie food," "not a reduced calorie food," or "not for weight control" in violation of 21 C.F.R. 101.60(c)(1)(iii)(B) and Sherman Law § 110100 (adopting this FDA regulation as California law). *See* Exhibits 1-16 (showing the Goldfish's labels all bearing the "0g Sugars" claim without the required warning).

28.     Defendants' labeling of Goldfish as having "0g Sugars" without prominently warning that the Goldfish are "not a low calorie food," "not a reduced calorie food," or "not for weight control" is also misleading and renders the Goldfish misbranded.

29.     Moreover, the Goldfish have sugar in them as an ingredient or have ingredients which have sugars naturally in them.[8] By using the "0g Sugars" claim on the PDP in violation of 21 C.F.R. § 101.60(c)(1)(iii)(B), Defendants were not authorized to round down to "0g" on the PDP even if the Products actually contain .5g or less sugar content. As such, the Goldfish "0g Sugars" claim on the PDP is an unauthorized nutrient content claim that is also literally false. Alternatively, if the "0g Sugars" claim on the Products is found to not be a defined nutrient content claim for the absence of sugar so that 21 C.F.R. § 101.60(c)(1) would not apply, then the "0g Sugars" claim on the Goldfish

---

[7] *See* https://www.annies.com/product/organic-cheddar-bunnies/.

[8] The Goldfish flavors that include sugar or dextrose, a simple sugar made from corn that is chemically identical to glucose (a/k/a sugar), as an ingredient include: Cheddar Goldfish (Exhibit 1), Organic Cheddar Goldfish (Exhibit 2), Organic Original Goldfish (Exhibit 3), Parmesan Goldfish (Exhibit 4), Flavor Blasted Xplosive Pizza Goldfish (Exhibit 8), Baby Cheddar Goldfish (Exhibit 9), Mix Cheesy Pizza + Parmesan Goldfish (Exhibit 10), Organic Parmesan Goldfish (Exhibit 11), Whole Grain XTRA Cheddar Goldfish (Exhibit 12), Colors Cheddar Goldfish (Exhibit 13), Disney Mickey Mouse Goldfish (Exhibit 14), Whole Grain Colors Cheddar Goldfish (Exhibit 15), and Flavor Blasted XTRA Cheddar Goldfish (Exhibit 16). All of the products are made with wheat flour which naturally contains small amounts of sugar.

12

1  still is literally false because the Goldfish have sugar in them as an ingredient or have ingredients

2  which have sugars naturally in them.

3  ### A.   DEFENDANTS' "0G SUGAR" NUTRIENT CLAIM IS MATERIALLY MISLEADING TO CONSUMERS

5  30.   When the FDA promulgated its regulation for nutrient content claims for the absence

6  of sugar, the agency explained why labeling a food that is not low calorie or significantly reduced in

7  calories as having "0g Sugars" without warning that it is "not a low calorie food," "not a reduced

8  calorie food," or "not for weight control" is materially misleading to consumers.  Specifically, the

9  FDA's regulation states: "Consumers may reasonably be expected to regard terms that represent that

10  the food contains no sugars or sweeteners, *e.g.*, 'sugar free' or 'no sugar,' as indicating a product

11  which is low in calories or significantly reduced in calories.  Consequently . . . a food may not be

12  labeled with such terms unless ... [s]uch term is immediately accompanied, each time it is used, by

13  either a statement 'not a reduced calorie food,' 'not a low calorie food,' or 'not for weight control.'"

14  21 C.F.R. § 101.60(c)(1).

15  31.   It is of significant consequence that the FDA included in the text of the regulation its

16  reasoning for the warning at issue in this action. FDA's research yielded the conclusion that consumers

17  reasonably expect foods which labels bear such claims to be low in calories or significantly reduced

18  in calories.  *See* Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of

19  Terms, 56 Fed. Reg. 60421-01, 60437–38, 60648–49 (Nov. 27, 1991) (to be codified at 21 C.F.R. pts.

20  5, 101 & 105).  Based on its research, the FDA concluded

21  *[C]onsumers may associate the absence of sugar with weight control claims and with foods that are low calorie or that have been altered to reduce calories significantly.* The agency concluded that any food making a statement about the absence of sugar would have to bear a statement that the food is not low calorie or calorie reduced, unless the food is a low or reduced calorie food.  *The agency stated that without this disclosure, some consumers might think the food was offered for weight or calorie control.*

25  Id. (emphasis added).

26  32.   The FDA's conclusion that consumers may associate the absence of sugar with foods

27  that are low calorie or that have been altered to reduce calories significantly is not a novel concept.

28  The FDA first determined based on findings of fact that consumers associate terms such as "no sugar"

13

and "sugar free" with weight control claims and foods that are low calorie or have been altered to reduce calories significantly in 1977. See 42 Fed. Reg. 36898, 37170. Based on these findings, the FDA has had a long-standing policy that a company making a "0g Sugars" claim is required to affirmatively disclose that the food is not low calorie or calorie reduced, unless the food is a low or reduced calorie food. *Id.*

33.     Critically, the FDA also considered evidence that, absent the disclosure that a food is not low calorie, not reduced calorie, or not for weight control, "0g Sugars" nutrient content claims can mislead consumers "***even though the nutrition labeling will list calorie content***." 56 Fed. Reg. at 60,436 (emphasis added). The reason for this should be obvious – consumers generally do not know that there is such a thing as a RACC, let alone what the RACC for any given food is, and based simply on the listing of the calories, whether it is a "low calorie food," or is a "reduced calorie food" under the standards established by the FDA that are specified in its regulations. Unsurprisingly, the FDA referenced no comments challenging or criticizing this principle in its commentary accompanying the final rule. *See* 58 Fed. Reg. 2302-01, 2326–28. Rather, it confirmed consumers reasonably expect foods whose labels bear claims that a product contains no sugar to be low or significantly reduced in calories, or superior to substitute products. 56 Fed. Reg. 60,421-01, 60,436–38.

34.     In September 2007, FDA "highlight[ed] accurate claims about the absence of sugar as a regulatory priority." FDA Guidance for Industry and FDA: Dear Manufacturer Letter Regarding Sugar Free Claims, Sept. 2007[9] (last updated Nov. 8, 2017). FDA further indicated that it "is concerned about the number of products we have seen that contain claims regarding the absence of sugar, such as, 'sugar free' but that fail to bear the required disclaimer statement when these foods are not 'low' or 'reduced in' calories or fail to bear the required disclaimer statement in the location or with the conspicuousness required by regulation." *Id.* Finally, it noted that, "[a]s part of our continuing effort to reduce the incidence of obesity in the United States, FDA wants to ensure that

---

[9]    https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-and-fda-dear-manufacturer-letter-regarding-sugar-free-claims.

14

consumers are provided with the label information they need to make informed choices for maintaining a healthy diet." *Id.*

35.   In addition to noting the importance for such disclosures, since 2007, FDA has sent warning letters to food manufacturers stating that each manufacturer's foods were misbranded for failing to provide an immediately accompanying statement that the product is "not a reduced calorie food," "not a low calorie food" or "not for weight control":

a.   FDA Warning Letter to The South Bend Chocolate Co., Inc., June 5, 2009[10];

b.   FDA Warning Letter to Carmack Industries LLC, Aug. 12, 2013[11];

c.   FDA Warning Letter to BestLife International, Inc., February 4, 2009[12]; and

d.   FDA Warning Letter to Oberlander Baking Co., August 29, 2007[13].

36.   The FDA issues warning letters such as these "only for violations of regulatory significance."[14]

37.   The foregoing regulatory materials and actions demonstrate that "0g Sugars" nutrient content claims are material to consumers – a conclusion that FDA articulated at least as early as 1977 – and that claims about the absence of sugar that do not comply with applicable regulations have been, and continue to be, a regulatory priority for FDA.

---

[10] https://wayback.archive-it.org/7993/20170112195609/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2009/ucm170016.htm.

[11] https://wayback.archive-it.org/7993/20170723015302/https://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2013/ucm365649.htm.

[12] https://wayback.archive-it.org/7993/20170112195846/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2009/ucm148648.htm.

[13] https://www.fdalabelcompliance.com/letters/ucm076486.

[14] 1.   FDA, Regulatory Procedures Manual at p. 4-2 (Mar. 2017), available at http://www.fda.gov/downloads/ICECI/ComplianceManuals/RegulatoryProceduresManual/UCM074330.pdf.   Warning letters are intended "to correct violations of the statutes or regulations" and "communicate[] the agency's position on a matter." *Id.* at 4-2 to 4.

15

38.     The fact that Defendants' nutrient content claim on Goldfish states "0g Sugars," and not "no sugar" or "sugar free," is irrelevant.  The FDA's list of examples how to express a nutrient content claim for the absence of sugar is not exclusive as evidenced by the FDA's choice of the phrase "terms such as" before listing the examples in the regulation. *See* 21 C.F.R. § 101.60(c)(1).  Moreover, as recognized in a published opinion by the United States Court of Appeals for the Ninth Circuit, there is no rational difference between "zero" and "0" for nutrient content claims in food labeling. *Hawkins v. Kroger Co.*, 906 F.3d 763, 771 (9th Cir. 2018).  "Spelling out the number does not change its meaning.  To hold otherwise would create an illogical rule . . . ." *Id.*

39.     Critically, because Goldfish actually contain 0.5 g sugar or less and the ability to round down to "0" outside the NFP is tied to providing the prominent warning under 21 C.F.R. § 101.60(c)(1), Goldfish was not permitted to round its sugar content down to "0" on its PDP since it failed to provide the required warning, rending Goldfish's "0g Sugar" claim on the PDP a literally false nutrient content claim.  Conversely, even if the "0g Sugars" statement on Goldfish's labeling was somehow found not to be a defined nutrient content claim for the absence of sugar subject to 21 C.F.R. § 101.60(c)(1), then the claim would be literally false (as well as misleading) and violates the law given that **all** of the Goldfish contain sugar or an ingredient that contains sugar, including 13 of the 16 Goldfish that expressly list sugar in the ingredients list on the labels.  21 U.S.C. § 343(a) (a food is misbranded if its labeling is false or misleading in any particular); 21 C.F.R. § 101.13(i)(3) (a statement that expressly characterizes the level of a nutrient in food may not be false or misleading in any respect).

40.     The NFP states that the Goldfish have 0g total sugar by virtue of the FDA's rounding rule because they presumably have less than 0.5g sugar per RACC. 21 C.F.R. § 101.9(c)(6)(ii).  This rounding rule applies only to the declaration of total sugars made within the NFP. *See* 21 C.F.R. § 101.13(j)(3) (an express nutrient content claim made outside the NFP may not be false or misleading).  For absence of sugar content statements outside the NFP, 21 C.F.R. § 101.60(c)(1)(i) controls rounding.  However, as noted, 13 of 16 varieties of the Goldfish contain sugar or a sugar known as

16

dextrose as reflected in the Goldfish's ingredients lists.[15]   Moreover, each Goldfish variety is made with wheat flour which itself contains a small amount of sugar naturally.[16]   Thus, if 21 C.F.R. § 101.60(c)(1) and its rounding down provision does not apply to the Goldfish's "0g Sugars" claim despite it being a claim about the absence of sugar, then the "0g Sugars" claim outside the NFP is literally false because all of the Goldfish contain sugar and there is no applicable rule permitting rounding down to zero.  Yet, Defendants try to take advantage of the allowance to round sugar down to zero in 21 C.F.R. § 101.60(c)(1), but without giving consumers the warning required by the same regulation that the Products are not low calorie, not reduced calorie, or not for weight control.  Defendants may not take the benefit of part of the regulation without complying with all the requirements of the regulation.

**B.   DEFENDANTS MISLEADINGLY SUGGEST GOLDFISH ARE SUPERIOR TO THEIR COMPETITORS' PRODUCTS**

41.   Defendants market the Goldfish to children and parents and use the "0g Sugar" claim on the Goldfish to get an advantage over competing products by suggest that the Goldfish are a healthful snack for children.  In Campbell's "Commitment Concerning Advertising to Children" (CCAC), Campbell's acknowledges that "Schedule A identifies the products we will advertise to children and includes ingredient statements and nutrition facts for those products."  CCAC, p. 1.[17] Schedule A is entitled "Campbell Soup Company – Product List Effective as of April 1, 2016" and goes on to identify in that list each of the Goldfish and their corresponding NFPs.[18]  Campbell's in the CCAC applicable to Goldfish also acknowledges that, "[m]ost marketing campaigns are interactive. To the extent those campaigns engage with children, we believe it is important that they contain or model healthy lifestyle messages, such as those in support of efforts to reduce obesity among children.

---

[15] *See* Exhibits 1-4, and 8-16.

[16] Https://fdc.nal.usda.gov/fdc-app.html#/food-details/168944/nutrients (whole grain wheat flour).

[17] https://www.campbellsoupcompany.com/wp-content/uploads/sites/31/2019/05/CPB_CommitmentConcerningAdvertisingtoChildrenUS.pdf.

[18] Schedule A https://www.campbellsoupcompany.com/wp-content/uploads/sites/31/2019/05/ScheduleA.pdf.

17

1  We will continue to provide healthy lifestyle messages in some part of our advertising to children.
2  Advertising supports a healthy lifestyle when it addresses a recognized need of children, either (a) to
3  control caloric intake or increase activity level to help achieve a healthy weight or (b) with respect to
4  positive emotional, social, or physical development." CCAC, p. 2. Campbell's further acknowledges
5  that such advertising is directed "to both children and adults." CCAC, p. 3.

6      42.    Campbell's express purpose of advertising Goldfish "to control caloric intake" or "to
7  help achieve a healthy weight" is precisely why the FDA concluded claims such as "0g Sugar" must
8  include the "not a low calorie food," "not a reduced calorie food" or "not for weight control" disclosure
9  required by 21 C.F.R. § 101.60(c)(1)(B). Indeed, "[*t*]*he agency stated that without this disclosure,*
10 *some consumers might think the food was offered for weight or calorie control.*" *See* Food Labeling:
11 Nutrient Content Claims, General Principles, Petitions, Definition of Terms, 56 Fed. Reg. 60421-01,
12 60437–38, 60648–49 (Nov. 27, 1991) (to be codified at 21 C.F.R. pts. 5, 101 & 105) (emphasis added).

13     43.    In targeting the advertising of their Goldfish to children and parents, Defendants use
14 the "0g Sugar" claim to gain a competitive advantage over its competitors' products. For example,
15 cheddar flavor Goldfish list sugar as an ingredient and are made with wheat flour which contains innate
16 sugar but is labeled with a "0g Sugar" claim on the PDP without being low or reduced in calories and
17 without the required warning. Yet, Annie's Cheddar Bunnies snack crackers, which are also made
18 with wheat flour but do not list sugar an ingredient, are not labeled as having "0g Sugar" on the
19 product's PDP despite being labeled as having 0g sugar in the products' NFP.

20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

18



44.     Even though Goldfish's unqualified "0g Sugar" claim suggests that it might be low calorie or significantly reduced in calorie compared to similar products, it contains the same number of calories (140) as Annie's Cheddar Bunnies for the same serving size (30g).

//

//

//

//

//

//

//

//

//

//

19

45.    Stauffer's cheddar cheese Whales, which are made with wheat flour wheat flour and contain sugar as an ingredient just like Goldfish, are truthfully labeled as having "less than 1g sugar" on the product's PDP, and not 0g Sugar as shown below.



46.    Even though Goldfish's unqualified "0g Sugar" claim suggests that it might be low calorie or significantly reduced in calorie compared to similar products, it contains the same number of calories (140) as Sauffer's Whales for the same serving size (30g).

CLASS ACTION COMPLAINT

47.    Target's Market Pantry brand Cheddar Penguins snack crackers are made with wheat flour and have sugar as an ingredient, and are labeled as having "2g Total Sugar" on the product's PDP as shown below.




48.    Even though Goldfish's unqualified "0g Sugar" claim suggests that it might be low calorie or significantly reduced in calorie compared to similar products, it contains the same number of calories (140) as the Market Pantry cheddar Penguins for the same serving size (30g), despite the Market Pantry product having 2g of sugar listed in the NFP.

49.    Trader Joe's Cheddar Rocket Crackers are similarly made with wheat flour and, like cheddar Goldfish, have less than 2% of sugar listed as an ingredient as shown below.

CLASS ACTION COMPLAINT





50.     Even though Goldfish's unqualified "0g Sugar" claim suggests that it might be low calorie or significantly reduced in calorie compared to similar products, it contains the same number of calories (140) as the Trader Joe's Cheddar Rocket crackers for the same serving size (30g), despite Trader Joe's listing less than 1g sugar in the NFP.

51.     Similarly, Imag!ne brand white cheddar cheese Stars are made with wheat flour but are not labeled as containing "0g Sugar" on their PDP as shown below.

CLASS ACTION COMPLAINT

52.     Even though Goldfish's unqualified "0g Sugar" claim suggests that it might be low calorie or significantly reduced in calorie compared to similar products, it contains the same number of calories (140) as the Imag!ne crackers, even though the two have slightly different serving sizes.

53.     Qwackers gluten free cheddar cheese crackers, made with rice flour rather than wheat flour and listing 0g Sugars in the NFP, does not advertise having "0g Sugar" on the product's PDP as Goldfish does.  However, Qwackers has fewer calories than cheddar goldfish (130 vs. 140) for a slightly lower serving size (28g vs. 30g).

//
//
//
//
//
//
//

23



**Nutrition Facts**
Servings Size 1 oz (28g)
Servings Per Container: 5

Amount Per Serving

Calories 130     Calories from Fat 70

% Daily Value*

Total fat 7g                    11%
Saturated Fat 4.5g              23%
Trans Fat 0g
Cholesterol 20mg                 7%
Sodium 130mg                     6%
Total Carbohydrate 10g           3%
Dietary Fiber 0g                 0%
Sugars 0g
Protein 4g

Vitamin A 4%    •    Vitamin C 0%
Calcium 11%     •    Iron 0%
* Percent Daily Values are based on a
2,000 calorie diet

INGREDIENTS: Sharp Cheddar (Pasteurized Milk, Cheese Cultures, Enzymes, An... [Vegetable Color]), White Rice Flour, B... (Cream, Salt), Potato Starch, Tapioca St... Cultured Buttermilk, Guar Gum, Cream... Tartar, Baking Soda, Sea Salt

CONTAINS: Milk

*Processed in a Dedicated Gluten Free and Peanut Free Facility*

54.     Defendants' "0g Sugar" claim on the PDP without warning they are "not a low calorie food," "not a reduced calorie food," or "not for weight control" as required by 21 C.F.R. § 101.60(c)(1)(iii) misleadingly suggests to consumers that their Goldfish are somehow superior to their competitors' materially similar products that made no "0g Sugar" claim outside the NFP. The misleading suggestion to consumers from the "0g Sugar" claim with no warning that Goldfish are superior to competitors by being low or reduced in calories or for weight control fits precisely with Campbell's express goal of advertising its Goldfish "to control caloric intake" or "to help achieve a healthy weight". CCAC, p. 2. By misleading consumers in this fashion, Defendants have gained an unfair competitive advantage over their competitors from which they profited by their sales to unwitting consumers.

**C.     DEFENDANTS REFUSED TO CEASE THEIR WRONGDOING**

55.     On March 3, 2019, Plaintiff Cleveland, through her counsel and pursuant to the CLRA and New York law, sent Defendants a certified letter, return receipt requested, notifying Defendants of the particular violations of Civil Code § 1770, and demanding that Defendants correct, repair or otherwise rectify the problems associated with its unlawful behavior which are in violation of Civil Code § 1770 ("CLRA Letter").

24

56.   In a letter dated April 15, 2019, Defendant Campbell's, on behalf of Defendant Pepperidge Farm, responded to the CLRA Letter and declined to cure the practices identified in Plaintiffs' CLRA Letter.

57.   On July 16, 2020, Plaintiff Rainwater, through her counsel and pursuant to New York's Uniform Commercial Code, N.Y. U.C.C. §§ 2-313 & 2-314 ("NY UCC") and the CLRA, sent Defendants a certified letter notifying Defendants of the particular violations of the NY UCC and of Civil Code § 1770, and demanding that Defendants correct, repair or otherwise rectify the problems associated with its unlawful behavior which are in violation of NY UCC and Civil Code § 1770 ("NY UCC Letter").

58.   As of the filing of this Complaint, Defendants have not cured the practices identified in Plaintiffs CLRA Letter or NY UCC Letter for all of the Goldfish at issue in this action.

### D.   CLASS ACTION ALLEGATIONS

59.   Plaintiffs seek to bring this action as a class action, under Cal. Civ. Proc. Code § 382, individually and on behalf of all others similarly situated. Plaintiffs seek to represent the Nationwide Class and California Class as defined below, and Plaintiff Rainwater seeks to represent the New York Class as defined below:

(1) The Nationwide Class:  All persons who purchased Goldfish labeled as having 0g Sugar outside the Nutrition Fact Panel in the United States within the applicable statute of limitations ("Nationwide Class");

(2) The California Class:  All persons who purchased Goldfish labeled as having 0g Sugar outside the Nutrition Fact Panel in California within the applicable statute of limitations ("California Class"); and

(3) The New York Class: All persons who purchased Goldfish labeled as having 0g Sugar outside the Nutrition Fact Panel in New York within the applicable statute of limitations ("New York Class") (collectively, the "Classes").

60.   Excluded from the Classes are: (i) Campbell's Soup Company, including any entity in which, Campbell's Soup Company has a controlling interest, is a parent or subsidiary, or which is controlled by Campbell's Soup Company, as well as its officers, directors, affiliates, legal

25

representatives, heirs, predecessors, successors, and assigns; (ii) Pepperidge Farm, Inc., including any entity in which, Pepperidge Farm, Inc. has a controlling interest, is a parent or subsidiary, or which is controlled by Pepperidge Farm, Inc., as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns; (iii) the judges to whom this action is assigned and any members of their immediate families; and (iv) purchases made outside the applicable statutes of limitations period.

61.     Plaintiffs reserve the right to re-define the Classes prior to class certification, or to seek certification of one or more multi-state classes.

### A.     Numerosity

62.     The members of the Classes are so numerous that joinder of all members of the Classes is impracticable. Although the precise number of class members is unknown to Plaintiffs at this time, on information and belief, the proposed Classes contain thousands of purchasers of Goldfish who have been damaged by the conduct alleged herein.

### B.     There is a Well-Defined Community of Interest

63.     In order to determine if there is a well-defined community of interests such that the question is one of a common or general interests, a court should consider: (1) whether common questions of law and facts predominate; (2) whether the class representatives' claims or defenses are typical of the Classes; and (3) whether the class representatives can adequately represent the Classes.

### i.     Common Questions of Law and Fact Predominate

64.     Common questions of law or fact exist as to all members of the Nationwide Class, the California Class, and the New York Class which predominate over any questions affecting only individual members of those Classes.  These common legal or factual questions include:

a.     Whether the Goldfish as described herein were labeled as having "0g Sugars";

b.     Whether the Goldfish labeling complies with the FDA's requirements for 0g sugar nutrient content claims;

c.     Whether the Goldfish's labels as described herein are unlawful;

d.     Whether the Goldfish contains sugar rendering the "0g Sugars" claim literally false;

26

e.  Whether Defendants' misrepresentations and omissions were material to reasonable consumers;

f.  Whether Defendants' labeling, marketing, and sale of Goldfish constitutes false advertising;

g.  Whether Defendants' "0g Sugars" labeling of Goldfish is an express warranty that Defendants' breached;

h.  Whether Defendants' conduct injured Plaintiffs and the Classes, and, if so, the nature and extent of the appropriate damages and/or restitution; and

i.  The appropriate injunctive relief to prevent Defendants from selling Goldfish with labels that fail to comply with the FDA's requirements for 0g sugar nutrient content claims.

65.  All questions as to the labeling, representations and publicly disseminated advertisements and statements attributable to Defendants at issue herein are similarly common. A determination of Defendants' knowledge as to the misleading and deceptive nature of the statements and omissions made on each and every label of the Goldfish will be applicable to all members of the Classes. Further, whether Defendants violated any applicable state laws and pursued the course of conduct complained of herein, whether Defendants acted intentionally or recklessly in engaging in the conduct described herein, and the extent or form of the appropriate injunctive relief, declaratory relief, damages, and/or restitutionary relief are common questions to the Classes.

## ii.  Plaintiffs' Claims are Typical of the Classes

66.  Plaintiffs' claims are typical of the Classes because Defendants injured all members of the Classes through the uniform misconduct described herein; all members of the Classes were subject to Defendants' false, misleading, and unfair marketing practices and representations, including the misleading claim the Goldfish products contain "0g Sugars" without warning they are "not a reduced calorie food," "not a low calorie food," or "not for weight control." Plaintiffs are no different in any material respect from any other member of the Classes they seek to represent, and the relief sought by Plaintiffs is common to the relief sought by the Classes.

/ / /

27

### iii.   Adequacy of Representation

67.   Plaintiffs are fair and adequate representatives of the Classes they seek to represent because Plaintiffs' interests do not conflict with the interests of the members of the Classes. Plaintiffs will prosecute this action vigorously and are highly motivated to seek redress against Defendants. Further, Plaintiffs have selected competent counsel that are experienced in class action and other complex litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the resources to do so.

### C.   A Class Action Is Superior to All Other Available Methods for the Fair and Efficient Adjudication of Plaintiffs' and Class Members' Claims

68.   A class action is superior to other available means for the fair and efficient adjudication of this dispute. It would be virtually impossible for members of the Classes individually to obtain the relief sought in this Complaint. The damages suffered by each individual member of the Classes will likely be relatively small, especially given the relatively small cost of the Goldfish at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' misconduct.

69.   Even if members of the Classes could afford individual actions, a multitude of such individual actions still would not be preferable to class-wide litigation. Individual actions also present the potential for inconsistent or contradictory judgments, which would be dispositive of at least some of the issues and hence interests of the other members not party to the individual actions, would substantially impair or impede their ability to protect their interests, and would establish incompatible standards of conduct for the party opposing the Classes.

70.   A class action presents far fewer litigation management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

71.   The Class may also be certified because Defendants acted or refused to act on grounds generally applicable to the Classes, thereby making preliminary and final injunctive relief and corresponding declaratory relief appropriate.

72.   Also, in the alternative, the Classes may be certified with respect to particular issues.

/ / /

28

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of Consumers Legal Remedies Act (CLRA)**
**Cal. Civ. Code §§ 1750,** *et seq.*
**(On behalf of Plaintiffs and the California Class)**

73.     Plaintiffs hereby incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

74.     Plaintiffs and the California Class have standing to pursue this claim as they purchased the Goldfish for personal use and have suffered injury in fact and lost money as a result of Defendants' actions, as set forth herein.

75.     At all times relevant hereto, each Defendant was and is a "person," as defined in Cal. Civ. Code § 1761(d).

76.     At all times relevant hereto, the Goldfish are a "good," as defined in Cal. Civ. Code § 1761(d).

77.     At all times relevant hereto, Plaintiffs and the California Class members' purchases of the Goldfish constitute "transactions," as defined in Cal. Civ. Code § 1761(e).

78.     The following subsections of the CLRA prohibit the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction is intended to result or which results in the sale or lease of goods or services to any consumer:

79.     Cal. Civ. Code § 1770(a)(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which they do not have;

80.     Cal Civ. Code § 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

81.     Cal. Civ. Code § 1770(a)(9): Advertising goods or services with intent not to sell them as advertised; and,

82.     Cal. Civ. Code § 1770(a)(16): Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

29

CLASS ACTION COMPLAINT

83.     Defendants have violated and continues to violate Cal. Civ. Code § 1770(a)(5) by representing that the Goldfish have sponsorship, approval, characteristics, ingredients, benefits or quantities which they do not have.

84.     Defendants have violated and continues to violate Cal. Civ. Code § 1770(a)(7) by representing that the Goldfish are of a particular standard, quality or grade, which they are not.

85.     Defendants have violated and continues to violate Cal. Civ. Code § 1770(a)(9) by advertising the Goldfish with the intent not to sell them as advertised.

86.     Defendants have violated and continues to violate Cal. Civ. Code § 1770(a)(16) by representing the Goldfish have been supplied in accordance with previous representations when they have not.

87.     Defendants have violated and continues to violate Cal. Civ. Code § 1770(a)(5), (a)(7), (a)(9) and (a)(16) as Defendants knew or should have known that the "0g Sugars" representation, without warning that the Goldfish were "not a low calorie food," "not a reduced calorie food," or "not for weight control" violated the FDCA, FDA regulations, the Sherman Law and the CLRA, that such a statement was material and that it would be relied upon by consumers including Plaintiffs. Moreover, Defendants' labeling Goldfish as containing "0g Sugars" when they have sugar in them also violated and continues to violate these sections of the CLRA.

88.     Indeed, Plaintiffs and the California Class relied on the Goldfish's packaging and marketing prior to purchase. Moreover, such reliance is implicit from the very nature of the false and misleading "0g Sugars" claim as described herein. These representations and omissions were uniformly made and would be important to a reasonable consumer in deciding whether to purchase the Goldfish. Had consumers known the Goldfish were misleadingly labeled and marketed as described herein, it would have affected reasonable consumers' purchasing decisions, such as they would not have purchased the Goldfish, would have purchased a lesser quantity of the Goldfish, or insisted on paying a lower price for the Goldfish. Instead, Plaintiffs and the California Class paid a premium for the Goldfish as a result of the false and misleading "0g Sugars" claim described herein.

89.     Defendants' misrepresentations and omissions were done with the intent to deceive Plaintiffs and the members of the California Class and to deprive them of their legal rights and money.

30

90.    Defendants knew that the "0g Sugars" labeling would deceive and confuse consumers into believing that the Goldfish are a low or reduced calorie food, and Defendants deceptively advertised or intentionally omitted the required disclaimer from the packaging.

91.    Plaintiffs are concurrently filing the declaration of venue required by Cal. Civ. Code § 1780(d).

92.    The policies, acts, and practices herein described were intended to result in the sale of Goldfish to the consuming public, particularly to parents with children, and violated and continue to violate Cal. Civ. Code § 1770(a)(5) by representing that the Goldfish have characteristics, benefits, uses, or quantities which they do not have.

93.    Defendants' actions as described herein were done with conscious disregard of Plaintiffs' and the California Class's rights, and Defendants have acted wantonly and maliciously in their concealment of the same.

94.    Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA as Defendants continue to make the same misrepresentations and omit material information regarding the Goldfish.

95.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs, and the California Class, seek an order enjoining Defendants from engaging in the methods, acts and practices alleged herein, and court costs and attorneys' fees.

96.    As described in ¶¶ 55 and 57, pursuant to § 1782 of the Act, Plaintiffs notified Defendants in writing of their violations of § 1770 described above and demanded that they correct the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act. Defendants refused to repair or otherwise rectify the problems with their unlawful acts.

97.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs, and the California Class, seek damages, restitution, and an order enjoining Defendants from engaging in the methods, acts and practices alleged herein, and any other relief deemed proper by the Court. Accordingly, Plaintiffs hereby request damages from Defendants as provided for in Civil Code § 1780, including:

   a.    Actual damages;

31

b.      Statutory damages allowable under Civil Code § 1780;

c.      Punitive damages;

d.      Any other relief which the Court deems proper; and

e.      Court costs and attorneys' fees.

**SECOND CAUSE OF ACTION**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On behalf of Plaintiffs and the California Class)**

98.     Plaintiffs hereby incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

99.     At all times relevant hereto, each Defendant was and is a "person," as defined in Cal. Bus. & Prof. Code § 17506.

100.    In marketing, advertising and labeling the Goldfish, Defendants made, and continue to make, false and misleading statements in order to induce consumers into purchasing the Goldfish on a false premise.

101.    In marketing, advertising and labeling the Goldfish, Defendants failed, and continue to fail, to make material disclosures, including the disclosure that the Goldfish are "not a low calorie food," "not a reduced calorie food," or "not for weight control."

102.    Defendants are aware that the claims it makes about the Goldfish confuse and deceive reasonable consumers.

103.    Defendants engaged in the deceptive conduct alleged above in order to induce the consuming public to purchase Goldfish.

104.    In marketing, advertising, and labeling the Goldfish described above, Defendants knew or should have known that the "0g Sugars" statements regarding the Goldfish were false and misleading.

105.    Defendants' misrepresentations of the material facts detailed above constitute unfair and fraudulent business practices, as defined by Cal. Bus. & Prof. Code § 17500.

106.    Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein.

32

107.   All of the conduct alleged herein occurred, and continues to occur, in Defendants' business. Defendants' wrongful action is part of a course of conduct that is repeated hundreds, if not thousands, of times every day.

108.   Plaintiffs were misled and, because the misrepresentations and omissions were uniform and material, reasonable consumers were misled by the "0g Sugars" labeling as alleged above.

109.   Additionally, Defendants' use of the forms advertising and marketing, as described herein, have deceived and are likely to continue deceiving the consuming public, in violation of California Business and Professions Code § 17500.

110.   As a result of Defendants' wrongful conduct, Plaintiffs and the California Class have suffered an injury in fact and a loss of money or property. Indeed, Plaintiffs and the California Class purchased the Goldfish because of Defendants' misrepresentations that the Goldfish have "0g Sugars" without the requisite disclaimer. Plaintiffs and the California Class would not have purchased the Goldfish at all, would have purchased a lesser quantity of the Goldfish or would not have paid a premium for the Goldfish if they had known that Defendants' advertising and representations were false and misleading.

111.   Accordingly, Plaintiffs and the California Class seek an order of this Court enjoining Defendants from engaging in the false advertising alleged herein in connection with the sale of the Products.  Additionally, Plaintiffs and the California Class seek an order awarding restitution of the money wrongfully acquired by Defendants by means of the false and misleading advertising and representations alleged herein.

### THIRD CAUSE OF ACTION
**Violations of Unfair Competition Law ("UCL")**
**Unlawful, Fraudulent & Unfair Business Practices**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**(On behalf of Plaintiffs and the California Class)**

112.   Plaintiffs hereby incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

113.   As alleged above, Plaintiffs and the California Class have standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of Defendants' actions. Specifically, prior to the filing of this action, Plaintiffs and the California Class purchased the Goldfish

33

for their own personal household use. In so doing, Plaintiffs relied on Defendants' misrepresentations and omissions of material facts, as alleged in detail above. As described in greater detail herein, Defendants' Goldfish labeled as containing "0g Sugars" are not low calorie or significantly reduced calorie foods, and do not have the required prominent warning adjacent to the "0g Sugars" claim that they are "not a low calorie food," or "not a reduced calorie food," or "not for weight control." Moreover, Defendants' "0g Sugar" claim on the PDP is false because the Goldfish contain sugar and Defendants are not permitted to round its sugar content to "0g" on the PDP without the benefit of and full compliance with 21 C.F.R. § 101.60(c)(1).

114. Defendants' misrepresentations and omissions of material fact as alleged herein constitute unlawful, unfair, and fraudulent business practices in that they deceived Plaintiffs and the California Class into purchasing and paying for a product or paying more for a product than they would have had they known the truth.

115. Sherman Law § 110765 prohibits misbranding any food.

116. Sherman Law § 110760 prohibits manufacturing, selling, delivering, holding or offering for sale any misbranded food.

117. Sherman Law § 110770 prohibits delivering or proffering for delivery misbranded food.

118. Under California and identical Federal laws, a food is misbranded if any word, statement, or other information required to be on a food's label or labeling is not prominently placed thereon with such conspicuousness, as compared with other words, statements, designs, or devices, in the labeling, and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use. Sherman Law § 110705; FDCA § 403(f).

119. Under California and identical Federal laws, a food is misbranded if its label bears a claim that characterizes the level of any nutrient unless it is used as defined by the U.S. Secretary of Health and Human Services. Sherman Law § 110670; FDCA §§ 403(r)(1) and (2)(A).

120. As described in greater detail herein, Defendants' Goldfish labeled as containing "0g Sugars" are not low calorie or significantly reduced calorie foods, and do not have the required prominent warning adjacent to the "0g Sugars" claim that they are "not a low calorie food," or "not a

34

reduced calorie food," or "not for weight control" in violation of 21 C.F.R. § 101.60(c)(1)(iii) and Sherman Law §§ 110670 and 110100 (adopting food regulations adopted pursuant to the FDCA as the food labeling regulations of California). Moreover, Defendants' Goldfish contain sugar and make a "0g Sugar" claim on the PDP, but Defendants are not permitted to round its .5g or less sugar content to "0g" on the PDP without full compliance with 21 C.F.R. § 101.60(c)(1) and Sherman Law §§ 110670 and 110100. Thus, the Goldfish are "misbranded" under California and identical Federal laws as the labeling fails to comply with Sherman Law §§ 110705 and 110670, and FDCA §§ 403(f), (r)(1)(A) and (2).

121.    Defendants violated and continue to violate Sherman Law § 110765, and hence also violated and continues to violate the "unlawful" prong of the UCL, by misbranding the Goldfish.

122.    Defendants violated and continue to violate Sherman Law § 110760, and hence also violated and continues to violate the "unlawful" prong of the UCL, by manufacturing, selling, delivering, holding or offering for sale the Goldfish which are misbranded.

123.    Defendants violated and continue to violate Sherman Law § 110770, and hence also violated and continues to violate the "unlawful" prong of the UCL, by delivering or proffering for delivery the Goldfish which are misbranded.

124.    Defendants' identical conduct that violates the Sherman Law also violates FDCA §§ 403(f), (r)(1)(A) and (r)(2)(B,) and 21 C.F.R. § 101.60(c)(1). This identical conduct serves as the sole factual basis of each cause of action brought by this Complaint, and Plaintiffs do not seek to enforce any of the state law claims raised herein to impose any standard of conduct that exceeds that which would violate the FDCA and applicable FDA regulations.

125.    Additionally, Defendants' conduct constitutes an "unlawful" business practice within the meaning of the UCL because it violates the CLRA and FAL.

126.    Defendants' actions as described herein constitute unfair competition within the meaning of California's UCL, insofar as the UCL prohibits "any unlawful, unfair or fraudulent business act or practice" or "unfair, deceptive, untrue or misleading advertising."

127.    Defendants have and continue to violate the "unfair" prong of the UCL through their misleading "0g Sugars" claim without warning Goldfish are "not a low calorie food," "not a reduced

CLASS ACTION COMPLAINT

1  calorie food," or "not for weight reduction."  Additionally, Defendants have and continue to violate
2  the "unfair" prong of the UCL through their misleading "0g Sugars" claim when, in fact Goldfish have
3  sugar in them.  The gravity of the harm to members of the California Class resulting from such unfair
4  acts and practices outweighs any conceivable reasons, justifications and/or motives of Defendants for
5  engaging in such deceptive acts and practices.  By committing the acts and practices alleged above,
6  Defendants have engaged, and continue to engage in unfair business practices within the meaning of
7  California Business and Professions Code §§ 17200, *et seq.*

8       128.  Plaintiffs and the California Class were misled because the misrepresentations and
9  omissions were uniform and material.

10      129.  Defendants' conduct constitutes a "fraudulent" business practice within the meaning of
11  the UCL insofar as Defendants' misrepresentations and omissions are likely to deceive members of
12  the public.

13      130.  Defendants acts and practices of labeling Goldfish as containing "0g Sugars" without
14  a prominent, adjacent warning that they are "not a low calorie food," "not a reduced calorie food," or
15  "not for weight control" has the effect of misleading consumers into believing the Goldfish are low
16  calorie or significantly reduced calorie foods when they are not.  Additionally, labeling Goldfish as
17  containing "0g Sugars" when they have sugar in them has the effect of misleading consumers into
18  believing the Goldfish have absolutely no sugar, when they actually contain some sugar.

19      131.  As a direct and proximate result of Defendants' wrongful business practices in violation
20  of the UCL, Plaintiffs and the California Class have suffered injury in fact and lost money or properly
21  as a result of purchasing the Goldfish.  Plaintiffs and California Class members would not have
22  purchased or paid as much for the Goldfish had they known the truth.

23      132.  Defendants' wrongful business practices constitute a continuing course of conduct of
24  unfair competition since Defendants are labeling, marketing, and selling the Goldfish in a manner
25  likely to deceive the public.

26      133.  Defendants' wrongful business practices also violates the UCL by giving them an
27  unfair competitive advantage.  Specifically, Defendants' "0g Sugar" claim on the PDP without
28  warning they are "not a low calorie food," "not a reduced calorie food," or "not for weight control" as

1    required by 21 C.F.R. § 101.60(c)(1)(iii) misleadingly suggests to consumers that their Goldfish are

2    somehow superior to their competitors' materially similar products that made no "0g Sugar" claim

3    outside the NFP.   By misleading consumers in this fashion, Defendants have gained an unfair

4    competitive advantage over their competitors from which they profited by their sales to unwitting

5    consumers.

6          134.    Pursuant to section 17203 of the UCL, Plaintiffs and the California Class seek an order

7    of this Court enjoining Defendants from engaging in the unlawful, unfair and fraudulent business

8    practices alleged herein, in connection with the sale of the Goldfish.

9          135.    Additionally, Plaintiffs and the California Class seek an order awarding restitution of

10   the money wrongfully acquired by Defendants by means of the unlawful, unfair and fraudulent

11   business practices alleged herein.

12

13   **FOURTH CAUSE OF ACTION**
     **Deceptive Acts or Practices**
     **Violation of New York Gen. Bus. Law § 349**
14   **(On Behalf of Plaintiff Rainwater and the New York Class)**

15         136.    Plaintiffs hereby incorporate the allegations in the foregoing paragraphs as if fully set

16   forth herein.

17         137.    This cause of action is brought by Plaintiff Rainwater on behalf of herself and the New

18   York Class.

19         138.    New York General Business Law Section 349 ("GBL § 349") declares unlawful

20   "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing

21   of any service in this state . . . ."

22         139.    The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive

23   acts and practices in violation of GBL § 349, and as such, Plaintiff Rainwater and the New York

24   Subclass Members seek monetary damages and the entry of injunctive relief against Defendants,

25   enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

26         140.    By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts

27   and practices by labeling the Goldfish as containing "0g Sugars" without a prominent accompanying

28   warning that the Goldfish are "not a low calorie food," "not a reduced calorie food," or "not for weight

37

1  control." Additionally, Defendants committed unfair or deceptive acts and practices by labeling the

2  Goldfish as containing "0g Sugars" when they contain sugar as described herein.

3       141.    The foregoing deceptive acts and practices are consumer oriented, were directed at

4  consumers, including Plaintiff Rainwater and the New York Class, and have had a broad impact on

5  consumers in New York.

6       142.    The foregoing deceptive acts and practices are misleading in a material way because

7  they suggest the Goldfish are low or significantly reduced in calories and do not contain sugar to

8  induce consumers to purchase the Goldfish.

9       143.    Plaintiff Rainwater and the New York Class paid a premium for the Goldfish insofar

10  as they purchased products that promised to be of a certain quality and induced a higher payment than

11  would have reasonably been paid otherwise.

12       144.    Plaintiff Rainwater and members of the New York Class were injured because they

13  paid for Goldfish labeled "0g Sugars," which they would not have done had they known the truth that

14  the Goldfish were not low or significantly reduced calorie foods, and that the Goldfish contained sugar.

15       145.    Plaintiff Rainwater, on behalf of herself and other members of the New York Class,

16  seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or $50.00,

17  whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

18

19                      **FIFTH CAUSE OF ACTION**
                      **False Advertising Law**

20            **Violation of New York Gen. Bus. Law § 350**
     **(On Behalf of Plaintiff Rainwater and the New York Class)**

21       146.    Plaintiffs hereby incorporate the allegations in the foregoing paragraphs as if fully set

22  forth herein.

23       147.    By the acts and conduct alleged herein, Defendants have engaged in consumer-oriented

24  conduct that is deceptive or misleading in a material way which constitutes false advertising in

25  violation of Section 350 of the New York General Business Law.

26       148.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

27                    False advertising in the conduct of any business, trade or commerce or in

28                    the furnishing of any service in this state is hereby declared unlawful.

149.   N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The...term 'false advertising, including, labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual

150.   Defendants' Goldfish labeled as containing "0g Sugars" without a prominent immediately accompanying warning that the Goldfish are "not a low calorie food," "not a reduced calorie food," or "not for weight control" were misleading and deceptive statements and representations of fact that were directed to consumers. Additionally, Defendants also made false, misleading and deceptive statements and representations of fact that were directed to consumers by labeling Goldfish as containing "0g Sugars" when they contain sugar as described herein.

151.   As a result of Goldfish's false, misleading and deceptive "0g Sugars" statements and representations of fact, Plaintiff Rainwater has suffered and continues to suffer economic injury.

152.   Plaintiff Rainwater and members of the New York Class were injured because they paid a premium for Goldfish labeled "0g Sugars," which they would not have done had they known the truth that the Goldfish were not low or significantly reduced calorie foods, and that the Goldfish contained sugar.

153.   Plaintiff Rainwater, on behalf of herself and other members of the New York Class seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or $500.00, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

### SIXTH CAUSE OF ACTION
**Restitution Based on Quasi-Contract/Unjust Enrichment**
**(On Behalf of Plaintiffs and the Classes)**

154.   Plaintiffs hereby incorporate the allegations in the foregoing paragraphs as if fully set forth herein. Plaintiffs plead this Count in the alternative.

155.   Defendants' conduct in enticing Plaintiffs and the Classes to purchase Goldfish through the use of false and misleading "0g Sugars" labeling as described throughout this Complaint is unlawful because the statements contained on Goldfish are misleading and untrue. Defendants took

39

1  monies from Plaintiffs and the Classes for products labeled as containing "0g Sugars," suggesting they

2  are low calorie or significantly reduced in calories, without warning that the Goldfish are "not a low

3  calorie food," "not a reduced calorie food," or "not for weight control," and without warning that they

4  actually contained sugar.  Moreover, Defendants took monies from Plaintiffs and the Classes for

5  products falsely labeled as containing "0g Sugars," when they contain sugar.  Defendants have been

6  unjustly enriched at the expense of Plaintiffs and the Classes as result of their unlawful conduct alleged

7  herein, thereby unjustly enriching Defendants and creating a quasi-contractual obligation on

8  Defendants to restore these ill-gotten gains to Plaintiffs and the Classes.

9       156.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the

10  Classes are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

11  **SEVENTH CAUSE OF ACTION**
**Breach of Express Warranty**

12  **(On Behalf of Plaintiffs and the Classes)**

13       157.   Plaintiffs hereby incorporate the allegations in the foregoing paragraphs as if fully set

14  forth herein.

15       158.   Defendants made express warranties to Plaintiffs and members of the Classes that the

16  Goldfish they were purchasing contained absolutely zero sugar by virtue of its "0g Sugars" statement

17  on the front label of the Goldfish.

18       159.   The "0g Sugars" express warranty made to Plaintiffs and members of the Classes

19  appears on the PDP of every package of the Goldfish labeled "0g Sugars."  This promise regarding

20  the Goldfish specifically relates to the goods being purchased and became the basis of the bargain.

21       160.   Plaintiffs and members of the Classes purchased the Goldfish in the belief that they

22  conformed to the express warranty that was made on the Goldfish packaging.

23       161.   Despite expressly warranting that the Goldfish have "0g Sugars," all of the Goldfish

24  contain more than absolutely zero sugar, as they list sugar as an ingredient or contain ingredients with

25  inherent sugars.  Each of these products has more than absolutely no sugar, or 0g sugar.

26       162.   As explained above, if, and only if, 21 C.F.R. § 101.60(c)(1) applies to Defendants'

27  "0g Sugars" claim and Defendants comply with all the requirements of that regulation could

28  Defendants have lawfully rounded down a small amount of sugar (.5g or less) to 0g on the Goldfish

40

---

CLASS ACTION COMPLAINT

labels outside the NFP as part of any nutrient content claim for the absence of sugar. 21 C.F.R. § 101.60(c)(1)(i). Defendants' Goldfish failed to comply with all the requirements of that regulation as detailed throughout this Complaint and, as such, could not round down to state "0g Sugars" for the Goldfish as they all contain sugar (including an ingredient with inherent sugar).

163.   If the court finds that 21 C.F.R. § 101.60(c)(1) does not apply to Defendants' "0g Sugars" claim on the Goldfish, then the "0g Sugars" claim is still a nutrient content claim subject to 21 C.F.R. § 101.13(i)(3) which requires any express claim about the amount or percentage of a nutrient not be false or misleading in any respect.

164.   In either event, the Goldfish have some amount of sugar greater than absolutely 0g of sugar, so the "0g Sugars" statement is literally false.

165.   Accordingly, Defendants breached the express warranty made to Plaintiffs and members of the Classes by failing to supply goods that conformed to the "0g Sugar" warranty they made on the PDP. As a result, Plaintiffs and members of the Classes suffered injury by virtue of the value of the Goldfish with sugar that were delivered being less than the value of the "0g Sugars" products expressly warranted, and deserve to be compensated for the damages they suffered.

166.   Plaintiffs and members of the Classes paid money for the Goldfish. However, Plaintiffs and members of the Classes did not obtain the full value of the products that were warranted. Accordingly, Plaintiffs and members of the Classes have suffered injury in fact and lost money or property as a result of Defendants' wrongful conduct.

167.   On March 3, 2019, a reasonable time after she knew or should have known of such breach, Plaintiff Cleveland, on behalf of herself and the other members of the Classes, sent a notice letter to Defendants which provided notice of Defendants' breach and demanded that Defendants correct, repair, replace, or otherwise rectify the breach complained of herein. Defendants received the letter on March 18, 2019. The letter also stated that if Defendants refused to cure the breach, a complaint would be filed seeking damages. Defendants failed to comply with the letter.

168.   On July 16, 2020, a reasonable time after she knew or should have known of such breach, Plaintiff Rainwater, on behalf of herself and the other members of the Classes, sent a notice letter to Defendants which provided notice of Defendants' breach and demanded that Defendants

41

1 correct, repair, replace, or otherwise rectify the breach complained of herein. Defendants received the
2 letter on July 17, 2020. The letter also stated that if Defendants refused to cure the breach within 7
3 days of the receipt of the letter, a complaint would be filed seeking damages. Defendants failed to
4 comply with the letter.

5     169.    As a direct and proximate cause of Defendants' breach of express warranties, Plaintiffs
6 and Class members have sustained damages, an economic loss equal to the total purchase price of
7 these unfit products, or the difference in value between the Goldfish as warranted and the Goldfish as
8 actually sold, as well as consequential and incidental damages, in the aggregate, in excess of $50,000.

9 **PRAYER FOR RELIEF**

10     WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the
11 Classes and for the Counts so applicable on behalf of the general public request an award and relief as
12 follows:

13     A.    An order certifying that this action is properly brought and may be maintained as a
14 class action, that Plaintiffs be appointed Nationwide Class Representatives and appointed California
15 Class Representatives, Plaintiff Rainwater be appointed New York Class Representative, and the
16 undersigned counsel be appointed Co-Lead Counsel for the Classes.

17     B.    Restitution in such amount that Plaintiffs and all members of the Classes paid to
18 purchase Defendants' Goldfish or paid as a premium over alternatives, or restitutionary disgorgement
19 of the profits Defendants obtained from those transactions, for Causes of Action for which they are
20 available.

21     C.    Compensatory damages for Causes of Action for which they are available.

22     D.    Statutory damages for Causes of Action for which they are available.

23     E.    Other statutory penalties for Causes of Action for which they are available.

24     F.    Punitive Damages for Causes of Action for which they are available.

25     G.    A declaration and Order enjoining Defendants from labeling and advertising the
26 Goldfish misleadingly, in violation of California's Sherman Food, Drug and Cosmetic Law and other
27 applicable laws and regulations as specified in this Complaint.

28

42

H.      An Order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest, and, to the extent available, awarding Plaintiffs' counsel reasonable attorneys' fees and costs.

I.      An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendants as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

J.      Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

DATED:  May 24, 2021

**FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**
JOSEPH N. KRAVEC, JR.
WYATT A. LISON

By: _____
**WYATT A. LISON**


**PEARSON, SIMON & WARSHAW, LLP**
DANIEL L. WARSHAW
MELISSA S. WEINER

***ATTORNEYS FOR PLAINTIFFS AND THE
PROPOSED CLASSES***

43

CLASS ACTION COMPLAINT