Wyatt A. Lison (SBN – 316775)
wlison@fdpklaw.com
Joseph N. Kravec, Jr. (admitted Pro Hac Vice)
jkravec@fdpklaw.com
**FEINSTEIN DOYLE PAYNE**
  **& KRAVEC, LLC**
429 Fourth Avenue, Suite 1300
Pittsburgh, PA 15219
Tel.: (412) 281-8400
Fax: (412) 281-1007

Daniel L. Warshaw (SBN – 185365)
dwarshaw@pswlaw.com
Matthew A. Pearson (SBN – 2914845)
mapearson@pslaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Blvd., Suite 400
Sherman Oaks, CA 91403
Tel.: (818) 788-8300
Fax: (818) 788-8104

Melissa S. Weiner (admitted Pro Hac Vice)
mweiner@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue
Suite 2150
Minneapolis, MN 55402
Tel.: (612) 389-0600
Fax: (612) 389-0610

***ATTORNEYS FOR PLAINTIFFS***
***AND THE PROPOSED CLASSES***

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DENISE CLEVELAND AND LANNA RAINWATER, on behalf of themselves and all others similarly situated,**<br><br>                                    **Plaintiffs,**<br><br>            v.<br><br>**CAMPBELL SOUP COMPANY AND PEPPERIDGE FARM, INC.,**<br><br>                                    **Defendants.** | **CASE NO.:  3:21-cv-06002-JD**<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**(1) Breach of Warranty**<br><br>**(2) Violation of California's Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*.** |

**(3) Violation of California's False Advertising Law, Cal. Bus. Prof. Code §§ 17500, et seq.**

**(4) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

**(5) Violation of New York's General Business Law § 349**

**(6) Violation of New York's General Business Law § 350**

**(7) Restitution based on Quasi Contract/Unjust Enrichment**

Plaintiffs Denise Cleveland and Lanna Rainwater, by and through their attorneys, bring this action against Defendants Campbell Soup Company and Pepperidge Farm, Inc. (collectively, "Defendants") and allege[1] as follows based upon their personal experience as to their own acts and status, and based upon the investigation of their counsel, and information and belief as to all other matters:

## I.    <u>NATURE OF THE CASE</u>

1.    This is a class action on behalf of persons who purchased various flavors of Defendants' Goldfish brand snack crackers[2] ("Goldfish"), which are prominently labeled as containing "0g Sugars" or "0g Total Sugars" (hereinafter "0g Sugars" or "0g Sugar") on the Goldfish products' principal display panel ("PDP").    These representations are patently false and obviously misleading since Goldfish contain sugar. 12 of 16 varieties of the Goldfish, including the most popular "Cheddar" flavor, list in fine print on the back of the package that sugar is an ingredient.[3]    Although 4 of the 16 varieties of Goldfish do not expressly disclose the presence of "sugar," all 16 varieties of Goldfish are made with wheat flour that contains sugar.[4] Given that all 16 varieties of Goldfish have

[1] These allegations are made subject to this Court's Order providing Plaintiffs limited leave to amend the complaint. Order, December 21, 2022, ECF No. 64.

[2] This action includes the following products, hereinafter referred to as ("Goldfish"): Cheddar Goldfish (Exhibit 1), Organic Cheddar Goldfish (Exhibit 2), Organic Original Goldfish (Exhibit 3), Parmesan Goldfish (Exhibit 4), Princess Goldfish (Exhibit 5), Whole Grain Cheddar Goldfish (Exhibit 6), Flavor Blasted Cheesy Pizza Goldfish (Exhibit 7), Flavor Blasted Xplosive Pizza Goldfish (Exhibit 8), Baby Cheddar Goldfish (Exhibit 9), Mix Cheesy Pizza + Parmesan Goldfish (Exhibit 10), Organic Parmesan Goldfish (Exhibit 11), Whole Grain XTRA Cheddar Goldfish (Exhibit 12), Colors Cheddar Goldfish (Exhibit 13), Disney Mickey Mouse Goldfish (Exhibit 14), Whole Grain Colors Cheddar Goldfish (Exhibit 15), and Flavor Blasted XTRA Cheddar Goldfish (Exhibit 16).

[3] The varieties of Goldfish listing sugar as an ingredient includes Cheddar Goldfish (Exhibit 1), Organic Cheddar Goldfish (Exhibit 2), Organic Original Goldfish (Exhibit 3), Parmesan Goldfish (Exhibit 4), Flavor Blasted Xplosive Pizza Goldfish (Exhibit 8) Baby Cheddar Goldfish (Exhibit 9), Mix Cheesy Pizza + Parmesan Goldfish (Exhibit 10), Organic Parmesan Goldfish (Exhibit 11), Whole Grain XTRA Cheddar Goldfish (Exhibit 12), Colors Cheddar Goldfish (Exhibit 13), Disney Mickey Mouse Goldfish (Exhibit 14), Whole Grain Colors Cheddar Goldfish (Exhibit 15), and Flavor Blasted XTRA Cheddar Goldfish (Exhibit 16).  Flavor Blasted Xplosive Pizza Goldfish (Exhibit 8) does not list "sugar" as an ingredient, but contains "dextrose" which is a monosaccharide that qualifies as sugar.

[4] *See* https://fdc.nal.usda.gov/fdc-app.html#/food-details/567624/nutrients.

sugar, the "0g Sugars" statement on the front label of each variety of Goldfish is literally false and misleading.

2.    Saying a product has 0g Sugars, when it has sugar in it, is not just false but is materially misleading to consumers.  A wealth of scientific medical studies and literature have linked excess sugar intake to a number of health conditions including heart disease, diabetes, hypertension, liver disease, metabolic syndrome and tooth decay.  Moreover, the unhealthful effects of sugar intake are cumulative in that the more sugar one eats the greater the risk one develops one or more of the health conditions linked to excessive sugar intake.  Because of the cumulative effect of sugar, even a small quantity per serving contributes to the health risk, and for snack foods like Goldfish that are designed to be eaten repeatedly year after year, this health risk contribution is significant. Doctors, dentists, and other medical professionals repeatedly remind their patients of the harmful health effects of excessive sugar intake.  Likewise, federal dietary guidelines, the American Medical Association and the American Heart Association stress the ill effects of excessive consumption of sugar and strongly recommend limits on sugar intake. The media reinforces this message with numerous news reports on the ill health effects of excessive sugar consumption.  All of this has trained consumers to try to limit the amount of sugar they eat.  Indeed, numerous consumer studies show that claiming a food has no sugar is one of the top marketing claims motivating consumers to purchase food products, and that advertising a food product as having "0g" sugar is the most effective way to communicate this message.  Accordingly, advertising a food product has 0g sugar is highly material to consumers' purchasing decision.  Therefore, labeling a food product, as Goldfish does, as having "0g Sugar," when that is patently false because it contains sugar, is materially misleading to the reasonable consumer.

3.    Defendants' conduct in promising Goldfish that had absolutely no sugar, when they have sugar in them, gives rise to a breach of express warranty.  Falsely stating that the Goldfish had absolutely no sugar when they contain sugar also violates the unlawful, unfair, and fraudulent prongs of California's Business and Professions Code §§ 17200, *et seq*. (the "UCL"), California's Business and Professions Code §§ 17500, *et seq*. (the "FAL"), the Consumers Legal Remedies Act of the California Civil Code §§ 1750, *et seq*. (the "CLRA"), and New York's General Business Law §§ 349

and 350. Plaintiffs allege in the alternative that Defendants' conduct is grounds for restitution on the basis of quasi-contract/unjust enrichment.

4.    Plaintiffs also seek injunctive and declaratory relief based upon Defendants' conduct asserted in this Complaint. As of the filing of this action, retail stores in California, New York, and throughout the United States are selling Goldfish falsely labeled as having "0g Sugars." Moreover, even if Defendants elect to remove the "0g Sugars" representation from the Goldfish's labels, Defendants are not presently enjoined from putting the "0g Sugars" representation back on the Goldfish's labels at any time Defendants so decide to revive the falsity that there are no sugars in their products. Accordingly, Plaintiffs seek declaratory and injunctive relief to stop Defendants from selling Goldfish products with the "0g Sugars" claim when they contain sugar.

## II.    THE PARTIES

5.    Plaintiff Denise Cleveland is a citizen of the State of California and a resident of San Bernardino County, California. From at least August 2017 and into February 2019, Ms. Cleveland purchased at least the following Goldfish varieties for her grandchildren: Cheddar Goldfish, Princess Goldfish, Colors Cheddar Goldfish and Baby Cheddar Goldfish. During this period of time, Ms. Cleveland purchased the Princess Goldfish and Baby Cheddar Goldfish about once a month and purchased the Cheddar Goldfish and Colors Goldfish only occasionally. Ms. Cleveland purchased various sizes of these products from Albertsons, Walmart, Sam's Club, Ralph's, and Stater Bros. stores in San Bernardino County, California, and usually paid somewhere between $2.00 - $8.50 for the products. The Goldfish Ms. Cleveland purchased were each prominently labeled as containing "0g Sugars," leading one to believe it literally had no sugar. Ms. Cleveland did not read the ingredients list located on other parts of the packaging of the Goldfish she purchased. Ms. Cleveland purchased the Goldfish relying, in part, on the false front label "0g Sugars" claim that caused her to believe that the Goldfish did not have sugar, and were thus healthier, safer, and more suitable for her to purchase in comparison to other similar products with sugar. Had the Goldfish that Ms. Cleveland purchased not been labeled with the false "0g Sugars" claim this would have affected Ms. Cleveland's purchasing decisions in that she would have purchased a lesser quantity of the Goldfish, and/or would have purchased other snack products that had no sugars. Indeed, since learning the Goldfish's "0g Sugars"

1    claim is false, Ms. Cleveland stopped purchasing the Princess Goldfish, Colors Cheddar Goldfish and

2    Baby Cheddar Goldfish, and only rarely purchases the Cheddar Goldfish.

3          6.     From at least August 2017 and into April 2018, Plaintiff Lanna Rainwater was a citizen

4    of the State of California, and a resident of Alameda County, California.  During the period of time

5    when she lived in Alameda County, California, Ms. Rainwater purchased Cheddar Goldfish

6    approximately twice a month from Safeway retail stores near her home in Alameda County, California,

7    including at least one purchase of the Cheddar Goldfish in April 2018.  From August 2019 through

8    July 2021 (including the time when this action was originally filed on May 26, 2021), Plaintiff Lanna

9    Rainwater was a citizen of the State of New York, and a resident of Madison County, New York. From

10   August 2019 and into December 2019, Ms. Rainwater purchased Cheddar Goldfish approximately

11   twice a month from Tops retail stores near her home in Madison County, New York.  Ms. Rainwater

12   usually purchased the 6.6-ounce bag of Cheddar Goldfish, which she believes usually ranged in price

13   between $3.00 and $5.00 per package.  The Goldfish Ms. Rainwater purchased were each prominently

14   labeled as containing "0g Sugars." Ms. Rainwater did not read the ingredients list located on other

15   parts of the packaging of the Goldfish she purchased.  Ms. Rainwater purchased these Goldfish

16   products relying, in part, on the false front label "0g Sugars" claim that caused her to believe that the

17   Goldfish did not have sugar, and were healthier, safer, and more suitable for her to purchase in

18   comparison to other similar products with sugar.  Had the Goldfish that Ms. Rainwater purchased not

19   been labeled with the false "0g Sugars" claim this would have affected Ms. Rainwater's purchasing

20   decisions in that she would have purchased a lesser quantity of the Goldfish, and/or would have

21   purchased other snack products that that had no sugars.  Indeed, since learning the Goldfish's "0g

22   Sugars" claim is false, Ms. Rainwater has not purchased them.

23         7.     Defendant Pepperidge Farm, Inc. ("Pepperidge Farm") manufacturers, packages,

24   labels, advertises, markets, distributes and sells the Goldfish in California, New York and throughout

25   the United States.  Pepperidge Farm is a Connecticut corporation with its headquarters and principal

26   place of business at 595 Westport Avenue, Norwalk, Connecticut 06851.  Pepperidge Farm is

27   registered to do business in California as entity number C0403685.  Pepperidge Farm has a direct-

28

1    store-delivery distribution model that uses independent contractor distributors throughout the United

2    States, including in California and New York.

3        8.    Defendant Campbell Soup Company ("Campbell's"), through its wholly-owned

4    subsidiary Pepperidge Farm, manufacturers, packages, labels, advertises, markets, distributes and sells

5    the Goldfish in California, New York and throughout the United States.  Campbell's is a New Jersey

6    corporation with its headquarters and principal place of business at 1 Campbell Place, Camden, New

7    Jersey 08103.  Campbell's is registered to do business in California as entity number C0206561.

8    Campbell's noted in its 2019 SEC Form 10-K sales increases in its "snacks" portfolio, specifically due

9    to growth in sales of the Goldfish products in 2018 and 2019.  Campbell's also owns and controls the

10   trademark for the "Goldfish" brand, and responded on behalf of Pepperidge Farm to Ms. Cleveland's

11   March 13, 2019 pre-litigation demand letter under the CLRA that was sent to Campbell's and

12   Pepperidge Farm prior to commencing this action.  Moreover, Campbell's 2019 Annual Report touts

13   Pepperidge Farm as part of its "Snacks division" and Goldfish as a leading revenue generating brand

14   for Campbell's.[5]  Campbell's also controls the advertising of Goldfish and directly participated in the

15   marketing strategy and advertising of Goldfish as further specified herein.

16                      **III.   <u>JURISDICTION AND VENUE</u>**

17       9.    On May 26, 2021, Plaintiffs filed this action in the Superior Court of the State of

18   California in and for the County of Alameda at Case No. RG 21101115.  On August 3, 2021,

19   Defendants removed this action from the County of Alameda Court to this Court.  *See* Notice of

20   Petition for Removal by Defendants ("Removal Petition") (ECF No. 1).  In their Removal Petition,

21   Defendants acknowledge that "the burden rests on the removing party to demonstrate that CAFA's

22   jurisdictional requirements are met".  *Id.* ¶ 10.   Defendants allege that "[r]emoval to the Northern

23

24   [5] "In our Snacks division, we are focused on accelerating the growth of this unique and differentiated
     portfolio. The combination of the Pepperidge Farm and Snyder's-Lance brands provide us with a
25   world-class portfolio and seasoned snacks leadership team. The combined brands make Campbell the
     No. 3* snacks company in the United States. We know how to win in snacks. Pepperidge Farm has
26   grown net sales for 19 consecutive quarters and has experienced a nearly 3-percent compound annual
     growth rate (CAGR) over the last three years…. With leading brands like Goldfish, … our Snacks
27   division has critical scale and is poised for accelerated growth."   Annual Report, p. 11
     (https://investor.campbellsoupcompany.com/static-files/7fdd1232-f047-4121-ac8d-31f07c48b5d1).
28

SECOND AMENDED CLASS ACTION COMPLAINT, Case No.: 3:21-cv-06002-JD

District of California is based on federal diversity jurisdiction under the diversity jurisdiction requirements of the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)" and specify their asserted grounds for removal CAFA jurisdiction thereunder. *Id.*, p. 1 and ¶¶ 9-29. Defendants' Removal Petition also alleges that "[u]nder 28 U.S.C. § 1441(a), venue is proper in the United States District Court for the Northern District of California because this Court embraces the Alameda County Superior Court, where this action was pending." *Id.*, ¶ 30.

## IV.   FACTUAL ALLEGATIONS

### A.   SUGAR, ITS HISTORY, AND AMERICAN SOCIETY

10.    Sugars, chemically, consist of carbon, oxygen, and hydrogen and are classified as carbohydrates. Carbohydrates can be classified as monosaccharides, disaccharides, oligosaccharides and polysaccharides. Sugars are generally those carbohydrates that are considered to be mono- and disaccharides.

11.    Sugar has had a significant impact on human history. It is naturally occurring in fruits and vegetables and integral to life of animals. Humans not only obtain it directly from the consumption of plants and other animals, but eventually were able to extract it from and add it to processed foods.

12.    Sugar makes things sweeter. Humans naturally evolved a sweet tooth as sugar offers energy and helped us store fat, providing our ancestors survival advantages during times of food scarcity.[6]

13.    Today, there is no relative food scarcity in the United States like our ancestors experienced. Many of the advantages sugar provided to our ancestors are our disadvantages due to the availability and abundance of food, particularly processed foods.

14.    As science has progressed, we continue to learn of the negative effects of an abundance of sugar in the human diet. Indeed, the association of sugar with many negative health conditions is well documented in scientific literature and addressed in American culture in many forms. For example, it is likely nearly every dentist in the United States warns children and their parents of the harms sugar can have on teeth.

---

[6] https://www.businessinsider.com/evolutionary-reason-we-love-sugar-2014-4

15.     As frequently occurs, politics and policy follow science, particularly science that is of great public concern.

16.     Pursuant to the National Nutrition Monitoring and Related Research Act of 1990, Congress has mandated that the Secretary of Agriculture and the Secretary of Health and Human Services, acting jointly, issue a report at least every five years containing nutritional and dietary information and guidelines for the general public entitled "Dietary Guidelines for Americans." 7 U.S.C. §§ 5302 and 5341. This report "shall be based on the preponderance of the scientific and medical knowledge which is current at the time the report is prepared." 7 U.S.C. § 5341. As of 2020 the reports will also include nutritional and dietary guidelines for pregnant women and for children from the time of their birth. (*Id.*) This provides better guidance to Americans by addressing all life stages.

17.     On June 30, 2020, the Dietary Guidelines Advisory Committee (herein "DGAC") appointed on February 21, 2019, sent to the Secretaries of Agriculture and Health and Human Services a scientific report.[7]

18.     The DGAC Scientific Report informs the development of the 2020-2025 Dietary Guidelines for Americans and includes the primary theme that, "[d]ietary patterns provide a framework in the Dietary Guidelines for Americans within and across life statues."[8]  This includes that:

- Healthy dietary patterns are defined by the quality of foods that are included, as well as foods that should be limited.
- A high-quality dietary pattern can promote health, achieve nutrient adequacy and energy balance, and reduce the risk of diet-related chronic diseases.

---

[7] *See* Dietary Guidelines Advisory Committee. 2020. Scientific Report of the 2020 Dietary Guidelines Advisory Committee: Advisory Report to the Secretary of Agriculture and the Secretary of Health and Human Services. U.S. Department of Agriculture, Agricultural Research Service, Washington, DC.; available at https://www.dietaryguidelines.gov/2020-advisory-committee-report; last accessed on January 11, 2023. (Herein DGAC Scientific Report.)

[8] ."[8] *Id.*, Letter to the Secretaries, p. 1.)

7

- The evidence on specific dietary components (e.g., beverages, seafood, added sugars, dietary fats, macronutrient profile) consistently supports the importance of foods consumed in healthy dietary patterns as a framework for the Guidelines.

19.    The executive summary of the DGAC Scientific Report recognizes that American's diets directly relate to chronic health conditions:

> Consistent and well-conducted Federal monitoring and surveillance have shown that most Americans have 1 or more chronic diet-related health conditions, including overweight and obesity, heart disease, stroke, type 2 diabetes, hypertension, liver disease, certain types of cancer, dental caries, and/or metabolic syndrome. The Committee's review of current dietary intakes shows that the American dietary landscape has not changed appreciably over time. Across the lifespan, the typical diet Americans consume result in **overconsumption of total energy**, saturated fats, sodium**, added sugars**, and for some consumers, alcoholic beverages. … patterns of food group intakes across the life course contribute to higher than recommended **intakes of food components of public health concern**, **such as added sugars**, sodium, and saturated fat.

DGAC Scientific Report, Executive Summary pp.2-3, emphasis added.

20.    The DGAC Scientific Report devotes an entire chapter to sugars noting in the introduction that, "[g]uidance on added sugars is of great relevance because of the high prevalence in the United States of overweight and obesity, type 2 diabetes, cardiovascular disease (CVD), and adiposity-related cancers."[9]

21.    In December of 2020 the United States Department of Agriculture released the Dietary Guidelines for Americans.[10]  The guidelines advise they are designed to "help all individuals and their

---

[9] DGAC Scientific Report, Part D. Ch. 12 p. 1.

[10] U.S. Department of Agriculture and U.S. Department of Health and Human Services. Dietary Guidelines for Americans, 2020-2025. 9th Edition. December 2020. Available at https://www.dietaryguidelines.gov/sites/default/files/2020-12/Dietary_Guidelines_for_Americans_2020-2025.pdf , last accessed January 11, 2023 (Herein "USDA Dietary Guidelines").

families consume a healthy, nutritionally adequate diet" with its aim to "promote health and prevent disease."[11]

22.     USDA Dietary Guideline 4 is to, "[l]imit Foods and Beverages Higher in Added Sugars, Saturated Fat, and Sodium, and Limit Alcoholic Beverages."[12]  The USDA advises that, "[a] healthy dietary pattern limits added sugars to less than 10 percent of calories per day." It further provides that:

- Added sugars account on average for almost 270 calories—or more than 13 percent of total calories—per day in the U.S. population.[13]

- Individuals have many potential options for reducing the intake of added sugars, including reducing the intake of major sources of added sugars. Strategies include reducing portions, consuming these items less often, and selecting options low in added sugars. [14]

23.     The USDA through Guideline 4 recognizes that Americans intake more sugar than it recommends, and this can be curtailed by actions that logically require an understanding of the amount of sugar present in a food product.

24.     Americans are historically concerned about sugar in their diet, and right now it is something the United States Government also feels the need to publicly advise Americans about.

25.     Americans' concern with sugar is also shared internationally.  Like the United States Government, the World Health Organization ("WHO") recommends limiting sugar to 10 percent of total energy intake, which it defines as the sum of all daily calories/kilojoules consumed from food and drink.[15]

---

[11] USDA Dietary Guidelines, pp. vii-viii.

[12] *Id*., at p. 40.

[13] *Id*., at p. 42.

[14] *Id*.

[15] Guideline: Sugars intake for adults and children. Geneva: World Health Organization; 2015, p. 4, available at https://www.who.int/publications/i/item/9789241549028 , last visited January 11, 2023.

**B.        HEALTH EFFECTS OF SUGAR**

26.     Diet-related diseases are a top cause of death.[16]

27.     As early as 1942 the American Medical Association began recommending a limit to the intake of excess sugar.[17]

28.     Recently in a February 2022 circulation by America Heart Association providing an update on heart disease and stroke statistics contained a chapter on Nutrition, which notes a positive association of excess dietary sugar with all-cause mortality.[18]  In other words, excess intake of sugar increases the rate of death generally.

29.     In fact, there is no reason that humans need sugar outside of its natural state.  As noted by the Harvard T.H. Chan School of Public Health, "[y]our body doesn't need to get any carbohydrate from added sugar."[19]

30.     There is a wealth of scientific literature associating dietary sugar intake with serious health conditions that are also a concern to the general public and consumers. These negative health

---

[16] "Diet-Related Diseases Are Leading Cause of Death in U.S., Health and Nutrition News, April 25, 2018 available at https://www.pcrm.org/news/health-nutrition/diet-related-diseases-are-leading-cause-death-us, last visited January 17, 2023 (citing The US Burden of Disease Collaborators. The state of US health, 1990-2016 burden of diseases, injuries, and risk factors among US states. *JAMA*. 2018;319:1444-1472.)

[17] American Medical Association Council on Foods and Nutrition. Some nutritional aspects of sugar, candy, and sweetened carbonated beverages. JAMA. Vol. 120, p.763–765 (1942).

[18] *See* Tsao CW, et. al., Heart Disease and Stroke Statistics-2022 Update: A Report From the American Heart Association. Circulation. Vol. 145, Issue 8 pp. e153-e639 (Feb. 2022), available at https://www.ahajournals.org/doi/epub/10.1161/CIR.0000000000001052, last visited January 12, 2023.) (citing Collin LJ, Judd S, Safford M, Vaccarino V, Welsh JA. Association of Sugary Beverage Consumption With Mortality Risk in US Adults: A Secondary Analysis of Data From the REGARDS Study.   JAMA   Netw   Open,   e193121,   May   2019),   available   at https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2733424 ,(last visited on January 12, 2023.)

[19] https://www.hsph.harvard.edu/nutritionsource/carbohydrates/added-sugar-in-the-diet/

SECOND AMENDED CLASS ACTION COMPLAINT, Case No.: 3:21-cv-06002-JD

effects, including those described below, can be aggravated when a person consumes more sugar than they think they are eating because the effects of sugar on the body are cumulative.[20]

31.    For years, news organizations have reported that Americans eat too much sugar in their diets, and that it should be restricted or replaced with foods that have less sugar due to the numerous negative health effects of eating too much sugar.[21]

### i.  Sugar and Heart Disease

32.    Heart disease is the leading cause of death for men, women, and people of most racial and ethnic groups in the United States.  One person dies every 34 seconds in the United States from cardiovascular disease.  This equated to about 1 in very 5 deaths in the United States in the year 2020.[22]

33.    The American Heart Association advises that, "[i]t's important to be aware of how much sugar you consume because our bodies don't need sugar to function properly.  Added sugars

---

[20] *See, e.g*., Walker ME, Xanthakis V, Moore LL, Vasan RS, Jacques PF. Cumulative sugar-sweetened beverage consumption is associated with higher concentrations of circulating ceramides in the Framingham Offspring Cohort. Am J Clin Nutr. 2020 Feb 1;111(2):420-428, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6997085/ (last visited January 16, 2023); Hirahatake KM, Jacobs DR, Shikany JM, Jiang L, Wong ND, Steffen LM, Odegaard AO. Cumulative intake of artificially sweetened and sugar-sweetened beverages and risk of incident type 2 diabetes in young adults: the Coronary Artery Risk Development In Young Adults (CARDIA) Study. Am J Clin Nutr. 2019 Sep 1;110(3):733-741, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6736196/ (last visited January 16, 2023); Te Morenga L, Mallard S, Mann J. Dietary sugars and body weight: systematic review and meta-analyses of randomised controlled trials and cohort studies. BMJ. 2012 Jan 15;346:e7492, available at https://pubmed.ncbi.nlm.nih.gov/23321486/ (last visited January 16, 2023).

[21] *See, e.g*., "No added sugar for babies, US advisory panel recommends," CNN July 16, 2020 available at https://www.cnn.com/2020/07/15/health/dietary-advisory-guidelines-infants-wellness/index.html last visited January 17, 2023; "Can eating too much sugar cause type 2 diabetes?," CBS News Sept. 29, 2016 available at https://www.cbsnews.com/news/sugar-can-too-much-cause-type-2-diabetes/; "What happens to your body when you binge on sugar," Fox News January 1, 2016 available at https://www.foxnews.com/health/what-happens-to-your-body-when-you-binge-on-sugar; "Sweet Tooth Gone Bad: Why 22 Teaspoons Of Sugar Per Day Is Risky," NPR Feb. 4, 2014 available at https://www.npr.org/sections/thesalt/2014/02/03/271130613/sweet-tooth-gone-bad-why-22-teaspoons-of-sugar-per-day-is-deadly;  "American Diet Too Sweet for the Heart's Health," ABC News available at https://abcnews.go.com/Health/HeartDiseaseNews/story?id=8399251, August 24, 2009.

[22] https://www.cdc.gov/heartdisease/facts.htm#:~:text=Heart%20Disease%20in%20the%20United%20States&text=About%20697%2C000%20people%20in%20the,1%20in%20every%205%20deaths.&text=Heart%20disease%20cost%20the%20United,year%20from%202017%20to%202018.

---

11

1  contribute zero nutrients but many added calories that can lead to extra pounds or even obesity. That
2  can reduce heart health."[23]

3        34.    Harvard's Vasanti Malik and her colleagues tracked more than 88,000 nurses between
4  1980 and 2004 that consumed at least two beverages a day containing added sugars, finding they had
5  a 35% higher risk of heart attack than those that who drank less than one a month.[24] She and her
6  colleagues found "that consumption of [Sugar Sweetened Beverages] is associated with a higher risk
7  of [Coronary Heart Disease] in women, even after other risk factors for [Coronary Heart Disease] or
8  an unhealthful diet or lifestyle are accounted for. This finding provides further rationale for limiting
9  the consumption of [Sugar Sweetened Beverages]."[25]

10        35.    In a later study involving more than 42,000 men over 22 years, Malik and her
11  colleagues at Harvard reached a similar conclusion.[26]

12        Consumption of sugar-sweetened but not artificially sweetened beverages was
13        associated with a significantly increased risk of CHD. Sugar-sweetened beverage
14        intake was also associated with adverse changes in some blood lipids, inflammatory
15        factors, and leptin. These results and those from other observational studies and trials
16        support recommendations to reduce the consumption of sugar-sweetened beverages to
17        prevent CVD.[27]

18

19  ───────────────
    [23] https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars
20
21  [24] Fung TT, Malik V, Rexrode KM, Manson JE, Willett WC, Hu FB. Sweetened beverage
    consumption and risk of coronary heart disease in women. Am J Clin Nutr. p.1037–1042 (April 2009),
22  available at, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2667454/pdf/ajcn8941037.pdf, last
    visited January 12, 2023.
23
    [25] Id., at p. 1041.
24
25  [26] de Koning L, Malik VS, Kellogg MD, Rimm EB, Willett WC, Hu FB. Sweetened beverage
    consumption, incident coronary heart disease, and biomarkers of risk in men. Circulation, pp. 1735-
26  41,        (April        2012),        available        at
    https://www.ahajournals.org/doi/epub/10.1161/CIRCULATIONAHA.111.067017,    last    visited
27  January 11, 2023.

28  [27] Id., at p. 1740.

36.     Harvard's Frank B. Hu, M.D., and his colleagues affiliated with Emory University and CDC examined time trends of added sugar consumption as a percentage of daily calories in the United States investigating the association of this consumption with Cardiovascular Disease mortality.[28] Their fifteen year study published in 2014 indicated that those who obtained 17% to 21% of their calories from added sugar had a 38% higher risk of death due to cardiovascular disease than those who obtained 8% of their calories from added sugar.  Their conclusions were similar with Maliks.

> A higher percentage of calories from added sugar is associated with significantly increased risk of CVD mortality. In addition, regular consumption of sugar-sweetened beverages is associated with elevated CVD mortality. Our results support current recommendations to limit the intake of calories from added sugars in US diets.

37.     Many similar studies show a correlation between sugar intake and the leading cause of death in United States.[29]

38.     The American Heart Association also issued a scientific statement in 2017 about the risk sugar poses to children advising that children consume less than 100 calories of added sugars a

---

[28] Yang Q, Zhang Z, Gregg EW, Flanders WD, Merritt R, Hu FB. Added sugar intake and cardiovascular diseases mortality among US adults. JAMA Intern Med., pp. 516-24 (April 2014), available at https://jamanetwork.com/journals/jamainternalmedicine/fullarticle/1819573, last visited January 12, 2023.

[29] E.g. Warfa, K., Drake, I., Wallström, P., Engström, G., & Sonestedt, E. Association between sucrose intake and acute coronary event risk and effect modification by lifestyle factors: Malmö Diet and Cancer Cohort Study. British Journal of Nutrition, pp. 1611-1620, (Oct. 2016), available at https://www.cambridge.org/core/journals/british-journal-of-nutrition/article/association-between-sucrose-intake-and-acute-coronary-event-risk-and-effect-modification-by-lifestyle-factors-malmo-diet-and-cancer-cohort-study/F9D0F87C1193CB4ED82993488BE3506F , last viewed January 11, 2023; Rahman I, Wolk A, Larsson SC. The relationship between sweetened beverage consumption and risk of heart failure in men. Heart., pp. 1961-1965 (Nov. 2015), available at https://heart.bmj.com/content/heartjnl/101/24/1961.full.pdf , last viewed January 11, 2023; Malik VS, Li Y, Pan A, De Koning L, Schernhammer E, Willett WC, Hu FB. Long-Term Consumption of Sugar-Sweetened and Artificially Sweetened Beverages and Risk of Mortality in US Adults. Circulation, pp. 2113-2125 (April 2019) available at https://www.ahajournals.org/doi/epub/10.1161/CIRCULATIONAHA.118.037401 , last viewed January 11, 2023.

day and children less than two years old avoid added sugars completely.[30]  This was because "[c]urrent evidence supports the associations of added sugars with increased energy intake, increased adiposity, increased central adiposity, and increased dyslipidemia, all of which are demonstrated CVD risk factors."[31]  The AHA further advised that, "the introduction of added sugars during infancy appears to be particularly harmful and should be avoided."  Thus, sugar consumption is important not merely in an isolated instance, but over a long period of time, including at the beginning of the life cycle.

39.    Harvard continues to advise that too much sugar can be one of the greatest threats to cardiovascular disease.[32]  Stated simply by Harvard's Dr. Hu, "[b]asically, the higher the intake of added sugar, the higher the risk for heart disease." Harvard recommends reading food labels, examining total sugars, and be cognizant of serving sizes.  Dr. Hu further warns of the dangers of ingesting more sugar than intended in relation to serving sizes, which may not actually equate to a person particular serving. "It might only say 5 grams of sugar per serving, but if the normal amount is three or four servings, you can easily consume 20 grams of sugar and thus a lot of added sugar."

### ii.  Sugar and Type 2 Diabetes

40.    Diabetes is a chronic condition affecting one's ability to produce insulin and process sugar in blood.  It can cause many serious health problems such as heart and blood vessel disease, nerve damage, kidney disease, eye damage, skin conditions, delayed healing, hearing impairment, sleep apnea and dementia.[33]

---

[30] Vos MB, et. al., Added Sugars and Cardiovascular Disease Risk in Children: A Scientific Statement From the American Heart Association. Circulation, pp. e1017-e1034 (May 2017), available at https://www.ahajournals.org/doi/epub/10.1161/CIR.0000000000000439 , last viewed January 11, 2023.

[31] Id., at p.e1028.

[32] https://www.health.harvard.edu/heart-health/the-sweet-danger-of-sugar, January 2022, last viewed January 11, 2023.

[33]      https://www.mayoclinic.org/diseases-conditions/type-2-diabetes/symptoms-causes/syc-20351193#:~:text=Diabetes%20is%20associated%20with%20an,damage%20(neuropathy)%20in%20limbs. last visited January 11, 2023.

41.     The CDC estimates that nearly 37.3 million people (11.3% of the US population) have diabetes.[34] Approximately 90-95% have type 2 diabetes, which develops over a person's life, typically diagnosed in adults, but in more recent times it is increasingly diagnosed in children.[35] Per the CDC, it is the seventh leading cause of death in United States and is associated with more than twice the average medical costs for people afflicted with it.[36]

42.     Sugar has been found to be a driver of Type 2 diabetes as identified by research published by the Mayo Clinic.[37] As noted by Dr. DiNicolantonio and his colleagues:

> Given substantial risks in terms of morbidity and mortality, there is great interest in diabetes prevention and treatment. Key to both of these issues is dietary intake, specifically the consumption of added sugars - one of the most fundamental determinants of glucose metabolism. Of the added sugars, fructose appears to be particularly pernicious with regard to glucose metabolism. There is a considerable body of basic science evidence, observational data, and clinical trial findings to suggest added fructose even relative to other sugars is a primary driver of diabetes development and consequences.[38]

43.     A similar conclusion was previously reached in 2013 by researchers from the Stanford University School of Medicine, the University of California-Berkeley, and the University of California-San Francisco.[39] That study distinctly found sugar as a cause of diabetes even in light of other potential contributing causes, including obesity.

---

[34] https://www.cdc.gov/diabetes/data/statistics-report/index.html, last visited January 11, 2023.

[35] https://www.cdc.gov/diabetes/basics/diabetes.html, last visited January 11, 2023.

[36] https://www.cdc.gov/diabetes/library/spotlights/diabetes-facts-stats.html

[37] DiNicolantonio JJ, O'Keefe JH, Lucan SC. Added fructose: a principal driver of type 2 diabetes mellitus and its consequences. Mayo Clin Proc., pp. 372-381 (Mar. 2015)

[38] *Id*., at p.372.

[39] Basu S, Yoffe P, Hills N, Lustig RH. The relationship of sugar to population-level diabetes prevalence: an econometric analysis of repeated cross-sectional data. PLoS One, pp. e57873. (Feb.

The observed relationship between dietary sugar exposure and diabetes in this statistical assessment was not mitigated by adjusting for confounders related to socioeconomics, aging, physical activity, or obesity. This suggests that sugar should be investigated for its role in diabetes pathogenesis apart from its contributions to obesity.[40]

44.    The relationship between diabetes and sugar is viewed similarly by the very scientists advising the USDA related to the issuance of Dietary Guidelines to the American people.[41]

### iii.  Sugar and Metabolic Syndrome, Hypertension, Liver Disease, and Cancer

45.    Sugar is associated with other adverse health conditions, including metabolic syndrome, hypertension, liver disease, and certain types of cancers.

46.    Metabolic syndrome is described as a group of conditions that together raise the risk of coronary heart disease, diabetes, stroke, and other serious health problems.  It is also known as insulin resistance syndrome.[42]

47.    In a 2010 meta-analysis, researchers from Harvard, the University of North Carolina-Chapel Hill, and other institutions found, "a clear link between [sugar sweetened beverage] consumption and risk of metabolic syndrome and type 2 diabetes."[43]

---

2013) , available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3584048/ , last viewed January 11, 2023.

[40] *Id.*, at pp. 7-8

[41] DGAC Scientific Report, Part D. Ch. 12 p. 2, citing to the 2015 Dietary Guidelines Advisory Committee report "in which a review of 5 systematic reviews and a meta-analysis yielded a conclusion of strong evidence that higher consumption of added sugars, especially SSB, increases risk of type 2 diabetes in adults."

[42] https://www.nhlbi.nih.gov/health/metabolic-syndrome, last visited January 12, 2023.

[43] Malik VS, Popkin BM, Bray GA, Després JP, Willett WC, Hu FB. Sugar-sweetened beverages and risk of metabolic syndrome and type 2 diabetes: a meta-analysis. Diabetes Care, pp.2477-83 (Nov. 2010), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2963518/pdf/zdc2477.pdf , last visited January 11, 2023.

48.    The effect of sugar on the cardiometabolic health of *young children* was studied in Holland. [44]  When evaluating the effect of sugar beverages, including those from naturally derived sugar in fruit juice, in children from their age of 13 months to 6 years old, the researchers found that sugar, "can affect cardiometabolic health directly, and not solely through increasing body weight."[45] The study concluded that higher intake of [Sugar Containing Beverage] at the age of 1 year was associated with a higher cardiometabolic risk factor score in school-aged boys."[46]  This reinforces that sugar intake at a young age can result in significant health effects later in childhood, let along adulthood.

49.    There are also numerous studies showing a correlation between sugar intake and hypertension (high blood pressure).[47]

50.    Dietary plans to reduce hypertension warn about excess sugar intake.  The Dietary Approaches to Stop Hypertension plan recommends limiting sweets and added sugars to 5 servings or fewer a week.[48]

---

[44] Leermakers ET, Felix JF, Jaddoe VW, Raat H, Franco OH, Kiefte-de Jong JC. Sugar-containing beverage intake at the age of 1 year and cardiometabolic health at the age of 6 years: the Generation R Study. Int J Behav Nutr Phys Act. 12:114, (Sept. 2015), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4574223/pdf/12966_2015_Article_278.pdf , last viewed January 12, 2023.

[45] Id., at p. 6 of 10.

[46] *Id*., at p. 9 of 10.

[47] E.g. Malik AH, Akram Y, Shetty S, Malik SS, Yanchou Njike V. Impact of sugar-sweetened beverages on blood pressure. Am J Cardiol, pp. 1574-80 (May 2014); Mansoori S, Kushner N, Suminski RR, Farquhar WB, Chai SC. Added Sugar Intake is Associated with Blood Pressure in Older Females. Nutrients, pp. 2060, (Sept. 2019), available at https://pubmed.ncbi.nlm.nih.gov/31484293/ , last viewed January 11, 2023.; DiNicolantonio JJ, Lucan SC, The wrong white crystals: not salt but sugar as aetiological in hypertension and cardiometabolic diseaseOpen Heart, pp. e000167, (Oct. 2014), available at https://openheart.bmj.com/content/openhrt/1/1/e000167.full.pdf , last viewed January 11, 2023.

[48]  https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/dash-diet/art-20048456 , last viewed January 11, 2023; https://www.nhlbi.nih.gov/education/dash-eating-plan , last viewed January 11, 2023.

51.     A number of more recent studies associate sugar consumption with liver disease.[49]  It is even suggested that non-alcohol fatty liver disease, which can corelate with excessive sugar consumption, is likely in the future to overtake alcohol consumption as the leading cause of liver disease.[50]

52.     Current scientific literature is also now addressing concerns that added sugars may increase certain cancer risks, such as breast cancer.[51]

---

[49] E.g. Jensen T, Abdelmalek MF, Sullivan S, Nadeau KJ, Green M, Roncal C, Nakagawa T, Kuwabara M, Sato Y, Kang DH, Tolan DR, Sanchez-Lozada LG, Rosen HR, Lanaspa MA, Diehl AM, Johnson RJ. Fructose and sugar: A major mediator of non-alcoholic fatty liver disease. J Hepatol, pp. 1063-1075 (May 2018), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5893377/pdf/nihms942365.pdf ,last viewed January 11, 2023; Geidl-Flueck B, Hochuli M, Németh Á, Eberl A, Derron N, Köfeler HC, Tappy L, Berneis K, Spinas GA, Gerber PA. Fructose- and sucrose- but not glucose-sweetened beverages promote hepatic de novo lipogenesis: A randomized controlled trial. J Hepatol, pp. 46-54. (Mar. 2021), available at https://pubmed.ncbi.nlm.nih.gov/33684506/ , last viewed January 11, 2023; Zhang S, Li H, Meng G, Zhang Q, Liu L, Wu H, Gu Y, Zhang T, Wang X, Zhang J, Dong J, Zheng X, Cao Z, Zhang X, Dong X, Sun S, Wang X, Zhou M, Jia Q, Song K; China Cohort Consortium; Borné Y, Sonestedt E, Qi L, Niu K. Added sugar intake and its forms and sources in relation to risk of non-alcoholic fatty liver disease: results from the TCLSIH cohort study. Br J Nutr. Vol. 26 pp. 1-20 (Sept. 2022), available at https://www.cambridge.org/core/journals/british-journal-of-nutrition/article/added-sugar-intake-and-its-forms-and-sources-in-relation-to-risk-of-nonalcoholic-fatty-liver-disease-results-from-the-tclsih-cohort-study/D6D3AF01E40F4290C451961A2A9426F3 , last viewed January 11, 2023.

[50] https://britishlivertrust.org.uk/sugar-and-the-liver-what-you-need-to-know/ , last viewed January 11, 2023.

[51] Debras C, Chazelas E, Srour B, Kesse-Guyot E, Julia C, Zelek L, Agaësse C, Druesne-Pecollo N, Galan P, Hercberg S, Latino-Martel P, Deschasaux M, Touvier M. Total and added sugar intakes, sugar types, and cancer risk: results from the prospective NutriNet-Santé cohort. Am J Clin Nutr., pp. 1267-1279, (Sept. 2020), available at https://academic.oup.com/ajcn/article/112/5/1267/5906559?login=false , last viewed January 11, 2023; Epner M, Yang P, Wagner RW, Cohen L. Understanding the Link between Sugar and Cancer: An Examination of the Preclinical and Clinical Evidence. Cancers (Basel), (December 2022), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9775518/pdf/cancers-14-06042.pdf , last viewed January 12, 2023.

18

#### iv.  Sugar and Dental Caries

53.    The WHO. advises that tooth decay, also referred to as dental caries,[52] is the most widespread noncommunicable disease in the world.[53]  This is also the case among children in the United States.[54]

54.    One of the primary causes of tooth decay is when bacteria in the mouth form acid from contact with sugars and starches.  The acid then attacks tooth enamel causing it lose minerals, which overtime destroys the enamel and causes a cavity.

55.    Any American who has a dental visit in has likely been told by their dentist that foods with sugar lead to cavities. It is part of common knowledge in the United States that sugar is not good for your teeth.

56.    The association with sugar and tooth decay has been reaffirmed in scientific literature.[55] A 2014 systematic review of studies in humans on the association between the amount of sugar intake and dental carries was done to inform the WHO. for updates to its guidelines on sugar consumption. It determined there was, "consistent evidence of moderate quality supporting a relationship between the amount of sugars consumed and dental caries development."[56]

---

[52] https://www.nidcr.nih.gov/health-info/tooth-decay, last viewed January 12, 2023.

[53]  https://www.who.int/news-room/fact-sheets/detail/sugars-and-dental-caries , last viewed January 12, 2023.

[54] Chi DL, Scott JM. Added Sugar and Dental Caries in Children: A Scientific Update and Future Steps.   Dent   Clin   North   Am.,   pp.17-33   (Jan.   2019),   available   at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6242348/pdf/nihms-1503143.pdf , last viewed January 12, 2023.

[55] Moynihan PJ, Kelly SA. Effect on caries of restricting sugars intake: systematic review to inform WHO   guidelines.   J   Dent   Res.,   pp.   8-18   (Jan.   2014),   available   at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3872848/pdf/10.1177_0022034513508954.pdf, last viewed January 12, 2023.

[56] Id., at 16.

57.    The relationship between sugar and tooth decay continues to support recommendations for reduction in sugar intake in diets.[57]

58.    This is no secret to any American that has been to a dentist.

C.    CONSUMERS CARE ABOUT SUGAR

59.    Given the overwhelming amount of information related to the harms of sugar in consumers' diets that they are confronted with in society, it is not surprising that knowing whether a product has sugar in it is important to people.  Governments regulate the representations on food product thereby further buttressing consumers reliance on the representations made on those products. This is particularly so when it comes to substance of great public health concern, such as sugar.

60.    When a consumer is told that a food product does not contain an ingredient, they have no reason to believe there could be a cumulative effect from the ingredient.  If asked what the sum of 0 plus 0 plus 0 plus 0 plus 0 is, the logical answer is 0.  This is much different than if a consumer was told to assume that 0 actually means 0.4.  If that assumption is applied, applying the cumulative effect to the same equation yields a result of 2.  The difference between 0 and 2 of a substance may have a profound effect on a consumer's purchasing decision.

61.    That consumers are concerned about sugar is not merely circumstantial but is evidenced directly by their responses in consumer surveys.

62.    A recent survey performed by the Nottingham's Division of Food, Nutrition and Dietetics "showed that when deciding on the healthiness of [food] items, sugar was significantly the most important macronutrient for participants."[58]  Another survey performed by the International Dairy Foods Association and the Sweetener Users Association showed "[s]eventy-two percent of

---

[57] Guideline: Sugars intake for adults and children. Geneva: World Health Organization; 2015, p. 13-17, available at https://www.who.int/publications/i/item/9789241549028 , last visited January 11, 2023.

[58] *Data: Sugar is Consumers' Top Healthy Food Factor, University of Nottingham*, 2/28/20 at https://www.foodmanufacturing.com/consumer-trends/news/21119049/data-sugar-is-consumers-top-healthy-food-factor

consumers say they are trying to reduce or avoid sugar … [with] 45% of respondents rated eating less sugar as a top goal in 2022."[59]

63.    In testing "nutrition claims regarding sugar content (i.e., 'sugar-free', 'no added sugar', '0% sugar', and 'low sugar')", a 2021 study found "that products containing claims related to sugar content (Experiment 1) were rated as more healthful than their regular alternatives but also as less tasty." [60]    A 2019 study tested numerical gram sugar claims, such as Defendants' "0g Sugars" claim on Goldfish, and concluded that consumers find the food healthier without any negative connotations about the taste.[61]    As such, absence of sugar claims tends to increase sales by causing consumers to consume the product at a greater frequency because they think it is healthier than comparable products with sugar.  2021 Sugar Claims Study, p. 6.  This is especially true for "0g sugar" claims that have no negative taste connotation.

64.    Food producers have also taken notice of consumer sentiment related to sugar.  "Selling healthier food has been a pillar of growth for many food companies over the past few decades."[62]  In 2019, "no sugar" was one of the three most prevalent health claims made on food products. *Id.*

65.    "Selling healthier food has been a pillar of growth for many food companies over the past few decades."[63]  In 2019, "no sugar" was one of the three most prevalent health claims made on food products.  *Id.*  A recent survey performed by the Nottingham's Division of Food, Nutrition and

---

[59] *Study: 72% of Consumers Trying to Reduce or Avoid Sugar*, Ron Sterk, 3/2/22 at https://www.supermarketperimeter.com/articles/7827-less-sugar-a-top-priority-for-consumers

[60] The impact of sugar-related claims on perceived healthfulness, caloric value and expected taste of food products, Marilia Prada, Magda Saraiva, Sofia Coelho, Cristina A. Godinho, Margarida V. Garrido, Food Quality and Preference 94 (2021) 104331, p. 5 (hereinafter, "2021 Sugar-Related Claims Study").

[61] *Sugar labeling: How numerical information of sugar content influences healthiness and tastiness expectation*, Simona Haasova and Arnd Florack, Department of Psychology, University of Vienna, Vienna, Austria, PLOS ONE, November 4, 2019 at https://doi.org/10.1371/journal.pone.0223510 (hereinafter, "2019 Sugar Labeling Study").

[62] *Top Five Strategies Used in Food Claims*, Katharina Bagula, 7/31/20 at https://www.euromonitor.com/article/top-five-strategies-used-in-food-claims

[63] *Top Five Strategies Used in Food Claims*, Katharina Bagula, 7/31/20 at https://www.euromonitor.com/article/top-five-strategies-used-in-food-claims

Dietetics "showed that when deciding on the healthiness of [food] items, sugar was significantly the most important macronutrient for participants."[64]   Another survey performed by the International Dairy Foods Association and the Sweetener Users Association showed "[s]eventy-two percent of consumers say they are trying to reduce or avoid sugar … [with] 45% of respondents rated eating less sugar as a top goal in 2022."[65]

66.    Consumers' concern over avoiding or reducing sugar intake and the perception of healthiness for food products that have no sugar was explained in one study from 2019: "First, experts, campaigns, and media reports have actively made consumers aware of the well-documented impact of excessive sugar consumption on obesity, diabetes, and coronary heart diseases.  Sugar has been long flag-marked by the modern medicine and public discourse as one of the direct determinants of foods healthiness and nutrition, and consumers are prompted to reduce its consumption for health improvements.  Second, consumers attend to nutrition information when they want to make health judgments or use it when it is salient on product packages." [66]

67.    Another study from 2021 explains that: "Food claims have the potential to inform healthier choices and improve the consumers' diet.  However, these claims may also mislead consumers, increasing the perception that a food is healthier than it really is." 2021 Sugar-Related Claims Study, p. 5 (citations omitted).[67]  "Critically, consumers may overlook potentially negative attributes … due to the presence of claims about positive ones ….  These effects may reflect a

---

[64] *Data: Sugar is Consumers' Top Healthy Food Factor, University of Nottingham*, 2/28/20 at https://www.foodmanufacturing.com/consumer-trends/news/21119049/data-sugar-is-consumers-top-healthy-food-factor

[65] *Study: 72% of Consumers Trying to Reduce or Avoid Sugar*, Ron Sterk, 3/2/22 at https://www.supermarketperimeter.com/articles/7827-less-sugar-a-top-priority-for-consumers

[66] *Sugar labeling: How numerical information of sugar content influences healthiness and tastiness expectation*, Simona Haasova and Arnd Florack, Department of Psychology, University of Vienna, Vienna, Austria, PLOS ONE, November 4, 2019 at https://doi.org/10.1371/journal.pone.0223510 (hereinafter, "2019 Sugar Labeling Study").

[67] The impact of sugar-related claims on perceived healthfulness, caloric value and expected taste of food products, Marilia Prada, Magda Saraiva, Sofia Coelho, Cristina A. Godinho, Margarida V. Garrido, Food Quality and Preference 94 (2021) 104331 (hereinafter, "2021 Sugar-Related Claims Study").

1   positivity bias (i.e., judging a product with a claim more favorably than a product without such claim)

2   or a health halo effect (i.e., consumers generalize a positive perception to other characteristics that are

3   not explicitly mentioned in the claim)." *Id*., pp. 1-2 (citations omitted).

4         68.   In testing "nutrition claims regarding sugar content (i.e., 'sugar-free', 'no added sugar',

5   '0% sugar', and 'low sugar')", the 2021 Sugar Claims Study found "that ***products containing claims***

6   ***related to sugar content*** (Experiment 1) were rated ***as more healthful and less caloric than their***

7   ***regular alternatives*** but also as less tasty." *Id*., p. 5 (emphasis added). But, the 2019 Sugar Labeling

8   Study tested numerical gram sugar content claims, such as "0g sugar", and found "that consumers'

9   shape their expectations about food products' healthiness, but not tastiness, according to information

10   on products' sugar content present in a numerical form. The lower the sugar content per 100 g of any

11   given food product, the healthier consumers perceived the product to be. Importantly, the decrease of

12   numerical sugar content did not lead consumers to the expectation that the food is less tasty." 2019

13   Sugar Labeling Study, p. 13. As such, absence of sugar claims tends to increase sales by causing

14   consumers to consume the product at a greater frequency because they think it is healthier and less

15   caloric than comparable products with sugar. 2021 Sugar Claims Study, p. 6. This is especially true

16   for "0g" sugar claims that have no negative taste connotation.

17         69.   Indeed, Defendants intended the "0g Sugar" claim on Goldfish to convey to children

18   and parents that Goldfish are a healthy snack and healthier than competitors' products that contain

19   sugar.[68]

20         **D.**     **DEFENDANTS FALSELY CLAIM GOLDFISH HAVE 0 SUGAR**

21         70.   Goldfish are extremely popular snack crackers sold nationwide. According to Statista

22   Research Department, 2.91 million Americans consumed 8 or more bags of Goldfish in 2020.[69]

23

24

---

25   [68] Campbell's "Commitment Concerning Advertising to Children," previously available at
     https://www.campbellsoupcompany.com/wp-

26   content/uploads/sites/31/2019/05/CPB_CommitmentConcerningAdvertisingtoChildrenUS.pdf.

27   [69] https://www.statista.com/statistics/289407/bags-of-pepperidge-farm-goldfish-crackers-eaten-in-

28   the-us/.

71.    The Goldfish at issue are prominently labeled as containing "0g Sugars" on their PDP as shown in Exhibits 1-16, and illustrated below:





72.    Contrary to the "0g Sugars" labeling, Goldfish have ingredients which have sugars in them naturally such as wheat, and 12 varieties of Goldfish list, in fine print within the ingredient list, that sugar is added to them.[70]

73.    By stating Goldfish have "0g Sugars" on the PDP, they represent to consumers that there is absolutely no sugar in the products.  Because Goldfish have sugar in them, the "0g Sugars" claim on the PDP is literally false and misleading.

---

[70] Footnote 3, *supra*, identifies the Goldfish varieties that have added sugar as an ingredient.

SECOND AMENDED CLASS ACTION COMPLAINT, Case No.: 3:21-cv-06002-JD

74.     Goldfish's "0g Sugars" claim fits perfectly with Defendants' intent to market Goldfish as healthier in comparison to competitors' comparable products with sugar. Defendants' claims though are false because sugars are present in Defendants products.

75.     By depicting them as being a healthier snack option compared to products that have sugar, consumers do not appreciate that the "0g Sugar" Goldfish are actually adding sugar to their diets. Because the unhealthful effects of sugar are cumulative, the more sugar one eats the greater the risk one develops one or more of the health conditions linked to sugar intake. Thus, even a small quantity per serving contributes to overall health risks.

76.     Yet, Defendants designed and market Goldfish to be eaten repeatedly – not infrequently. For example, in 2021 Defendants launched a consumer campaign, using television and social media advertisements, aimed at getting adults to eat Goldfish "by the handful."[71] If there was absolutely zero sugar in the products, there would be no sugar to add up even with frequent snacking. And Defendants' listing of "sugar," buried in fine print in the ingredient list, does not disclose precisely how much sugar is truly being added for each handful of Goldfish eaten.

### E.     DEFENDANTS REFUSED TO CEASE THEIR WRONGDOING

77.     On March 3, 2019, Plaintiff Cleveland, through her counsel and pursuant to the CLRA and New York law, sent Defendants a certified letter, return receipt requested, notifying Defendants of the particular violations of Civil Code § 1770, and demanding that Defendants correct, repair or otherwise rectify the problems associated with its unlawful behavior which are in violation of Civil Code § 1770 ("CLRA Letter").

78.     In a letter dated April 15, 2019, Defendant Campbell's, on behalf of Defendant Pepperidge Farm, responded to the CLRA Letter and declined to cure the practices identified in Plaintiffs' CLRA Letter.

---

[71] See "Goldfish Crackers Launches TikTok Challenge with Basketball's Best Friends," PR Newswire, April 6, 2021, online at https://www.prnewswire.com/news-releases/goldfish-crackers-launches-tiktok-challenge-with-basketballs-best-friends-301263179.html, last visited January 17, 2023.

79. On July 16, 2020, Plaintiff Rainwater, through her counsel and pursuant to New York's Uniform Commercial Code, N.Y. U.C.C. §§ 2-313 & 2-314 ("NY UCC") and the CLRA, sent Defendants a certified letter notifying Defendants of the particular violations of the NY UCC and of Civil Code § 1770, and demanding that Defendants correct, repair or otherwise rectify the problems associated with its unlawful behavior which are in violation of NY UCC and Civil Code § 1770 ("NY UCC Letter").

80. As of the filing of Plaintiffs' Complaint, Defendants had not cured the practices identified in Plaintiffs CLRA Letter or NY UCC Letter for all of the Goldfish at issue in this action.

## V.    CLASS ACTION ALLEGATIONS

81. Plaintiffs seek to bring this action as a class action, under Cal. Civ. Proc. Code § 382, individually and on behalf of all others similarly situated. Plaintiffs seek to represent the "Warranty Class" and the "California Fine Print Class" as defined below; Plaintiff Cleveland seeks to represent the "California Concealed Sugar Class" as defined below; and Plaintiff Rainwater seeks to represent the "New York Fine Print Class" as defined below. Collectively, the Warranty Class, California Concealed Sugar Class, California Fine Print Class, and New York Fine Print Class are called the "Classes" herein.

(1) The Warranty Class: All persons who purchased Goldfish labeled as having 0g Sugar outside the Nutrition Fact Panel in the United States within the applicable statute of limitations ("Warranty Class").

(2) The California Concealed Sugar Class: All persons who purchased Goldfish labeled as having 0g Sugar outside the Nutrition Fact Panel in California within the applicable statute of limitations ("California Concealed Sugar Class") and where sugar was not listed as an ingredient.

(3) The California Fine Print Class: All persons who purchased Goldfish labeled as having 0g Sugar outside the Nutrition Fact Panel in California within the applicable statute of limitations ("California Fine Print Class") and where sugar was listed as an ingredient.

(4) The New York Fine Print Class: All persons who purchased Goldfish labeled as having 0g Sugar outside the Nutrition Fact Panel in New York within the applicable statute of limitations ("New York Fine Print Class") and where sugar was listed as an ingredient.

82.     Excluded from the Classes are: (i) Campbell's Soup Company, including any entity in which, Campbell's Soup Company has a controlling interest, is a parent or subsidiary, or which is controlled by Campbell's Soup Company, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns; (ii) Pepperidge Farm, Inc., including any entity in which, Pepperidge Farm, Inc. has a controlling interest, is a parent or subsidiary, or which is controlled by Pepperidge Farm, Inc., as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns; (iii) the judges to whom this action is assigned and any members of their immediate families; and (iv) purchases made outside the applicable statutes of limitations period.

83.     Plaintiffs reserve the right to re-define the Classes prior to class certification, or to seek certification of one or more multi-state classes.

## A.    NUMEROSITY

84.     The members of the Classes are so numerous that joinder of all members of the Classes is impracticable. Although the precise number of class members is unknown to Plaintiffs at this time, on information and belief, the proposed Classes contain thousands of purchasers of Goldfish who have been damaged by the conduct alleged herein.

## B.    THERE IS A WELL-DEFINED COMMUNITY OF INTEREST

85.     In order to determine if there is a well-defined community of interests such that the question is one of a common or general interests, a court should consider: (1) whether common questions of law and facts predominate; (2) whether the class representatives' claims or defenses are typical of the Classes; and (3) whether the class representatives can adequately represent the Classes.

### i.    Common Questions of Law and Fact Predominate

86.     Common questions of law or fact exist as to all members of the Classes which predominate over any questions affecting only individual members of those Classes.  These common legal or factual questions include:

a.      Whether the Goldfish as described herein were labeled as having "0g Sugars";

b.      Whether the Goldfish labeled as having "0g Sugars" contain sugar;

c.      Whether Defendants' "0g Sugars" labeling of Goldfish is an express warranty;

27

d.    Whether Defendants breached their "0g Sugars" warranty;

e.    Whether the "0g Sugars" claims on Goldfish's as described herein are false;

f.    Whether the "0g Sugars" claims on Goldfish's as described herein are misleading;

g.    Whether the "0g Sugars" claims on Goldfish's as described herein are unlawful;

h.    Whether the "0g Sugars" claim on Goldfish was material to reasonable consumers;

i.    Whether Defendants' labeling, marketing, and sale of Goldfish constitutes false advertising;

j.    Whether Defendants' conduct injured Plaintiffs and the Classes, and, if so, the nature and extent of the appropriate damages and/or restitution; and

k.    The appropriate injunctive relief to prevent Defendants from selling Goldfish with false "0g Sugars" claims.

87.    All questions as to the labeling, representations and publicly disseminated advertisements and statements attributable to Defendants at issue herein are similarly common. A determination of Defendants' knowledge as to the misleading and deceptive nature of the statements made on each and every label of the Goldfish will be applicable to all members of the Classes. Further, whether Defendants violated any applicable state laws and pursued the course of conduct complained of herein, whether Defendants acted intentionally or recklessly in engaging in the conduct described herein, and the extent or form of the appropriate injunctive relief, declaratory relief, damages, and/or restitutionary relief are common questions to the Classes.

### ii.  Plaintiffs' Claims are Typical of the Classes

88.    Plaintiff Cleveland's claims are typical of the Breach of Warranty Class, the Concealed Sugar Class, and the California Fine Print Class.  Defendants injured all members of the Breach of Warranty Class, the Concealed Sugar Class, and the Fine Print Class through the uniform misconduct described herein; all members of the Breach of Warranty Class, the Concealed Sugar Class, and the California Fine Print Class were subject to Defendants' false, misleading, and unfair marketing practices and representations, including the false and misleading claim the Goldfish products contain "0g Sugars." Plaintiff Cleveland is no different in any material respect from any other member of the Breach of Warranty Class, the Concealed Sugar Class, and the California Fine Print Class she seeks

to represent, and the relief sought by Plaintiff Cleveland is common to the relief sought by the Breach of Warranty Class, the Concealed Sugar Class, and the California Fine Print Class.

89.    Plaintiff Rainwater's claims are typical of the Breach of Warranty Class, California Fine Print Class and New York Fine Print Class.  Defendants injured all members of the Breach of Warranty Class, California Fine Print Class and New York Fine Print Class through the uniform misconduct described herein; all members of the Breach of Warranty Class, California Fine Print Class and New York Fine Print Class were subject to Defendants' false, misleading, and unfair marketing practices and representations, including the false and misleading claim the Goldfish products contain "0g Sugars." Plaintiff Rainwater is no different in any material respect from any other member of the Breach of Warranty Class, California Fine Print Class and New York Fine Print Class she seeks to represent, and the relief sought by Plaintiff Rainwater is common to the relief sought by the Breach of Warranty Class, California Fine Print Class and New York Fine Print Class.

### iii.  Adequacy of Representation

90.    Plaintiffs are fair and adequate representatives of the Classes they seek to represent because Plaintiffs' interests do not conflict with the interests of the members of the Classes. Plaintiffs will prosecute this action vigorously and are highly motivated to seek redress against Defendants. Further, Plaintiffs have selected competent counsel that are experienced in class action and other complex litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the resources to do so.

### C.    A CLASS ACTION IS SUPERIOR TO ALL OTHER AVAILABLE METHODS FOR THE FAIR AND EFFICIENT ADJUDICATION OF PLAINTIFFS' AND CLASS MEMBERS' CLAIMS

91.    A class action is superior to other available means for the fair and efficient adjudication of this dispute.  It would be virtually impossible for members of the Classes individually to obtain the relief sought in this Complaint.  The damages suffered by each individual member of the Classes will likely be relatively small, especially given the relatively small cost of the Goldfish at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' misconduct.

92.     Even if members of the Classes could afford individual actions, a multitude of such individual actions still would not be preferable to class-wide litigation.  Individual actions also present the potential for inconsistent or contradictory judgments, which would be dispositive of at least some of the issues and hence interests of the other members not party to the individual actions, would substantially impair or impede their ability to protect their interests, and would establish incompatible standards of conduct for the party opposing the Classes.

93.     A class action presents far fewer litigation management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

94.     The Class may also be certified because Defendants acted or refused to act on grounds generally applicable to the Classes, thereby making preliminary and final injunctive relief and corresponding declaratory relief appropriate.

95.     Also, in the alternative, the Classes may be certified with respect to particular issues.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of Plaintiffs and the Warranty Class)**

96.      Plaintiffs hereby incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

97.     Defendants expressly warranted to Plaintiffs and members of the Warranty Class that the Goldfish they were purchasing contained absolutely zero sugar by virtue of its "0g Sugars" statement on the front label of the Goldfish.

98.     The "0g Sugars" express warranty made to Plaintiffs and members of the Warranty Class appears on the PDP of every package of the Goldfish labeled "0g Sugars."  This promise regarding the Goldfish specifically relates to the goods being purchased and became the basis of the bargain.

99.     Plaintiffs and members of the Warranty Class purchased the Goldfish in the belief that they conformed to the express warranty that was made on the Goldfish packaging.

100.    Despite expressly warranting that the Goldfish have "0g Sugars," all of the Goldfish contain sugar and have more than absolutely zero sugar.

101.    Accordingly, Defendants breached the express warranty made to Plaintiffs and members of the Warranty Class by failing to supply goods that conformed to the "0g Sugar" warranty they made on the PDP.  As a result, Plaintiffs and members of the Warranty Class suffered injury by virtue of the value of the Goldfish with sugar that were delivered being less than the value of the "0g Sugars" products expressly warranted and deserve to be compensated for the damages they suffered.

102.    Plaintiffs and members of the Warranty Class paid money for the Goldfish.  However, Plaintiffs and members of the Warranty Class did not obtain the full value of the products that were warranted.  Accordingly, Plaintiffs and members of the Warranty Class have suffered injury in fact and lost money or property as a result of Defendants' wrongful conduct.

103.    On March 3, 2019, a reasonable time after she knew or should have known of such breach, Plaintiff Cleveland, on behalf of herself and the other members of the Warranty Class, sent a notice letter to Defendants which provided notice of Defendants' breach and demanded that Defendants correct, repair, replace, or otherwise rectify the breach complained of herein. Defendants received the letter on March 18, 2019.  The letter also stated that if Defendants refused to cure the breach, a complaint would be filed seeking damages.  Defendants failed to comply with the letter.

104.    On July 16, 2020, a reasonable time after she knew or should have known of such breach, Plaintiff Rainwater, on behalf of herself and the other members of the Warranty Class, sent a notice letter to Defendants which provided notice of Defendants' breach and demanded that Defendants correct, repair, replace, or otherwise rectify the breach complained of herein. Defendants received the letter on July 17, 2020.  The letter also stated that if Defendants refused to cure the breach within 7 days of the receipt of the letter, a complaint would be filed seeking damages.  Defendants failed to comply with the letter.

105.    As a direct and proximate cause of Defendants' breach of express warranties, Plaintiffs and Warranty Class members have sustained damages, an economic loss equal to the total purchase price of these unfit products, or the difference in value between the Goldfish as warranted and the Goldfish as actually sold, as well as consequential and incidental damages, in the aggregate, in excess of $50,000.

**SECOND CAUSE OF ACTION**
**Violation of Consumers Legal Remedies Act (CLRA)**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class)**

106.   Plaintiffs hereby incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

107.   Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class have standing to pursue this claim as they purchased the Goldfish for personal use and have suffered injury in fact and lost money as a result of Defendants' actions, as set forth herein.

108.   At all times relevant hereto, each Defendants were and are a "person," as defined in Cal. Civ. Code § 1761(d).

109.   At all times relevant hereto, the Goldfish are a "good," as defined in Cal. Civ. Code § 1761(d).

110.   At all times relevant hereto, Plaintiffs', the members of California Concealed Sugar Class', and the members of the California Fine Print Class' purchases of the Goldfish constitute "transactions," as defined in Cal. Civ. Code § 1761(e).

111.   The following subsections of the CLRA prohibit the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction is intended to result or which results in the sale or lease of goods or services to any consumer:

112.   Cal. Civ. Code § 1770(a)(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which they do not have;

113.   Cal Civ. Code § 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

114.   Cal. Civ. Code § 1770(a)(9): Advertising goods or services with intent not to sell them as advertised; and,

115.   Cal. Civ. Code § 1770(a)(16): Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

116.    Defendants have violated and continues to violate Cal. Civ. Code § 1770(a)(5) by representing that the Goldfish have sponsorship, approval, characteristics, ingredients, benefits or quantities which they do not have.

117.    Defendants have violated and continues to violate Cal. Civ. Code § 1770(a)(7) by representing that the Goldfish are of a particular standard, quality or grade, which they are not.

118.    Defendants have violated and continues to violate Cal. Civ. Code § 1770(a)(9) by advertising the Goldfish with the intent not to sell them as advertised.

119.    Defendants have violated and continues to violate Cal. Civ. Code § 1770(a)(16) by representing the Goldfish have been supplied in accordance with previous representations when they have not.

120.    Defendants have violated and continues to violate Cal. Civ. Code § 1770(a)(5), (a)(7), (a)(9) and (a)(16) as Defendants knew or should have known that the "0g Sugars" was false and misleading as specified herein, that such a statement was material and that it would be relied upon by consumers including Plaintiffs. Defendants' labeling Goldfish as containing "0g Sugars" when they have sugar in them also violated and continues to violate these sections of the CLRA.

121.    Indeed, Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class relied on the Goldfish's packaging and marketing prior to purchase.  Such reliance is implicit from the very nature of the false and misleading "0g Sugars" claim as described herein.  These representations were uniformly made and would be important to a reasonable consumer in deciding whether to purchase the Goldfish. Had consumers known the Goldfish were falsely and misleadingly labeled and marketed as described herein, it would have affected reasonable consumers' purchasing decisions, such as they would not have purchased the Goldfish, would have purchased a lesser quantity of the Goldfish, or insisted on paying a lower price for the Goldfish.  Instead, Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class, paid a premium for the Goldfish as a result of the false and misleading "0g Sugars" claim described herein.

122.    Defendants' misrepresentations were done with the intent to deceive Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class, and to deprive them of their legal rights and money.

123.    Defendants knew that the "0g Sugars" labeling would deceive and confuse consumers into believing that the Goldfish have no sugar.

124.    Plaintiffs filed the declaration of venue required by Cal. Civ. Code § 1780(d).  ECF No. 25, p. 121.

125.    The policies, acts, and practices herein described were intended to result in the sale of Goldfish to the consuming public, particularly to parents with children, and violated and continue to violate Cal. Civ. Code § 1770(a)(5) by representing that the Goldfish have characteristics, benefits, uses, or quantities which they do not have.

126.    Defendants' actions as described herein were done with conscious disregard of Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class's rights, and Defendants have acted wantonly and maliciously in their concealment of the same.

127.    Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA as Defendants continue to make the same misrepresentations regarding Goldfish.

128.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class, seek an order enjoining Defendants from engaging in the methods, acts and practices alleged herein, and court costs and attorneys' fees.

129.    Pursuant to § 1782 of the Act, Plaintiffs notified Defendants in writing of their violations of § 1770 described above and demanded that they correct the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act. Defendants refused to repair or otherwise rectify the problems with their unlawful acts.

130.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class, seek damages, restitution, and an order enjoining Defendants from engaging in the methods, acts and practices alleged herein, and any other relief deemed proper by the Court. Accordingly, Plaintiffs hereby request damages from Defendants as provided for in Civil Code § 1780, including:

a.    Actual damages;

b.    Statutory damages allowable under Civil Code § 1780;

1       c.     Punitive damages;

2       d.     Any other relief which the Court deems proper; and

3       e.     Court costs and attorneys' fees.

4  **THIRD CAUSE OF ACTION**

**Violation of California's False Advertising Law**

5  **Cal. Bus. & Prof. Code §§ 17500, *et seq.***

**(On behalf of Plaintiffs, the California Concealed Sugar Class, and the California Fine Print**

6  **Class)**

7  131.     Plaintiffs hereby incorporate the allegations in the foregoing paragraphs as if fully set

8  forth herein.

9  132.     At all times relevant hereto, each Defendants were and are "persons," as defined in Cal.

10  Bus. & Prof. Code § 17506.

11  133.     In marketing, advertising, and labeling the Goldfish, Defendants made, and continue to

12  make, false and misleading statements in order to induce consumers into purchasing the Goldfish on

13  a false premise.

14  134.     In marketing, advertising, and labeling the Goldfish, Defendants misrepresent that they

15  have "0g Sugars" when they in fact have sugars.

16  135.     Defendants are aware that the claims it makes about the Goldfish confuse and deceive

17  reasonable consumers.

18  136.     Defendants engaged in the deceptive conduct alleged above in order to induce the

19  consuming public to purchase Goldfish.

20  137.     In marketing, advertising, and labeling the Goldfish described above, Defendants knew

21  or should have known that the "0g Sugars" statements regarding the Goldfish were false and

22  misleading.

23  138.     Defendants' misrepresentations of the material facts detailed above constitute unfair

24  and fraudulent business practices, as defined by Cal. Bus. & Prof. Code § 17500.

25  139.     Defendants had reasonably available alternatives to further their legitimate business

26  interests, other than the conduct described herein.

27

28

140.    All of the conduct alleged herein occurred, and continues to occur, in Defendants' business. Defendants' wrongful action is part of a course of conduct that is repeated hundreds, if not thousands, of times every day.

141.    Plaintiffs were misled and, because the misrepresentations were uniform and material, reasonable consumers were misled by the "0g Sugars" labeling as alleged above.

142.    Additionally, Defendants' use of the forms advertising and marketing, as described herein, have deceived and are likely to continue deceiving the consuming public, in violation of California Business and Professions Code § 17500.

143.    As a result of Defendants' wrongful conduct, Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class, have suffered an injury in fact and a loss of money or property. Indeed, Plaintiffs and the California Class purchased the Goldfish because of Defendants' misrepresentations that the Goldfish have "0g Sugars" when Goldfish have sugars. Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class, would not have purchased the Goldfish at all, would have purchased a lesser quantity of the Goldfish or would not have paid a premium for the Goldfish if they had known that Defendants' advertising and representations were false and misleading.

144.    Accordingly, Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class, seek an order of this Court enjoining Defendants from engaging in the false advertising alleged herein in connection with the sale of the Products.  Additionally, Plaintiffs and the California Class seek an order awarding restitution of the money wrongfully acquired by Defendants by means of the false and misleading advertising and representations alleged herein.

**FOURTH CAUSE OF ACTION**
**Violations of Unfair Competition Law ("UCL")**
**Unlawful, Fraudulent & Unfair Business Practices**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class,)**

145.    Plaintiffs hereby incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

SECOND AMENDED CLASS ACTION COMPLAINT, Case No.: 3:21-cv-06002-JD

146.    As alleged above, Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class, have standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of Defendants' actions.  Specifically, prior to the filing of this action, Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class, purchased the Goldfish for their own personal household use.  In so doing, Plaintiffs relied on Defendants' misrepresentations as alleged in detail above.  As described in greater detail herein, Defendants' Goldfish labeled as containing "0g Sugars" claim on the PDP is false and misleading because the Goldfish contain sugars.

147.    Defendants' misrepresentations as alleged herein constitute unlawful, unfair, and fraudulent business practices in that they deceived Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class, into purchasing and paying for a product or paying more for a product than they would have had they known the truth.

148.    Sherman Law § 110765 prohibits misbranding any food.

149.    Sherman Law § 110760 prohibits manufacturing, selling, delivering, holding or offering for sale any misbranded food.

150.    Sherman Law § 110770 prohibits delivering or proffering for delivery misbranded food.

151.    A food is misbranded if its labeling is false or misleading in any particular.  Sherman Law § 110670.

152.    Defendants' Goldfish labeled as containing "0g Sugars" is false and misleading as Goldfish contain sugars, and thus Goldfish are misbranded.

153.    Defendants violated and continue to violate Sherman Law § 110765, and hence also violated and continues to violate the "unlawful" prong of the UCL, by misbranding the Goldfish.

154.    Defendants violated and continue to violate Sherman Law § 110760, and hence also violated and continues to violate the "unlawful" prong of the UCL, by manufacturing, selling, delivering, holding or offering for sale Goldfish which are misbranded.

155. Defendants violated and continue to violate Sherman Law § 110770, and hence also violated and continues to violate the "unlawful" prong of the UCL, by delivering or proffering for delivery the Goldfish which are misbranded.

156. Defendants' identical conduct that violates the Sherman Law also violates FDCA §§ 403(a). This identical conduct serves as the sole factual basis of each cause of action brought by this Complaint, and Plaintiffs do not seek to enforce any of the state law claims raised herein to impose any standard of conduct that exceeds that which would violate the FDCA and applicable FDA regulations.

157. Additionally, Defendants' conduct constitutes an "unlawful" business practice within the meaning of the UCL because it violates the CLRA and FAL.

158. Defendants' actions as described herein constitute unfair competition within the meaning of California's UCL, insofar as the UCL prohibits "any unlawful, unfair or fraudulent business act or practice" or "unfair, deceptive, untrue or misleading advertising."

159. Defendants have and continue to violate the "unfair" prong of the UCL through their false and misleading "0g Sugars" claim when, in fact Goldfish have sugar in them. The gravity of the harm to members of the California Concealed Sugar Class and the California Fine Print Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications and/or motives of Defendants for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendants have engaged, and continue to engage in unfair business practices within the meaning of California Business and Professions Code §§ 17200, *et seq*.

160. Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class, were misled because the misrepresentations were uniform and material.

161. Defendants' conduct constitutes a "fraudulent" business practice within the meaning of the UCL insofar as Defendants' misrepresentations are likely to deceive members of the public.

162. Defendants acts and practices of labeling Goldfish as containing "0g Sugars" when they have sugar in them has the effect of misleading consumers into believing the Goldfish have absolutely no sugar, when they actually contain some sugar.

163.    As a direct and proximate result of Defendants' wrongful business practices in violation of the UCL, Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class, have suffered injury in fact and lost money or properly as a result of purchasing the Goldfish.  Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class, would not have purchased or paid as much for the Goldfish had they known the truth.

164.    Defendants' wrongful business practices constitute a continuing course of conduct of unfair competition since Defendants are labeling, marketing, and selling the Goldfish in a manner likely to deceive the public.

165.    Defendants' wrongful business practices also violates the UCL by giving them an unfair competitive advantage.  Specifically, Defendants' false "0g Sugar" falsely and misleadingly suggests to consumers as described herein that Goldfish are somehow superior to their competitors' materially similar products with sugar that made no "0g Sugar" claim outside the NFP.  By misleading consumers in this fashion, Defendants have gained an unfair competitive advantage over their competitors from which they profited by their sales to unwitting consumers.

166.    Pursuant to section 17203 of the UCL, Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class, seek an order of this Court enjoining Defendants from engaging in the unlawful, unfair and fraudulent business practices alleged herein, in connection with the sale of the Goldfish.

167.    Additionally, Plaintiffs, the California Concealed Sugar Class, and the California Fine Print Class, seek an order awarding restitution of the money wrongfully acquired by Defendants by means of the unlawful, unfair and fraudulent business practices alleged herein.

## FIFTH CAUSE OF ACTION
### Deceptive Acts or Practices
### Violation of New York Gen. Bus. Law § 349
### (On Behalf of Plaintiff Rainwater and the New York Fine Print Class)

168.    Plaintiffs hereby incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

169.    This cause of action is brought by Plaintiff Rainwater on behalf of herself and the New York Fine Print Class.

170.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . . ."

171.    The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff Rainwater and the New York Fine Print Class Members seek monetary damages and the entry of injunctive relief against Defendants, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

172.    By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by labeling the Goldfish as containing "0g Sugars" when they contain sugar as described herein.

173.    The foregoing deceptive acts and practices are consumer oriented, were directed at consumers, including Plaintiff Rainwater and the New York Fine Print Class, and have had a broad impact on consumers in New York.

174.    The foregoing deceptive acts and practices are misleading in a material way because they falsely suggest the Goldfish do not contain sugar when Goldfish have sugar, and falsely suggest Goldfish are healthier over comparable products with sugar in order to induce consumers to purchase the Goldfish.

175.    Plaintiff Rainwater and the New York Fine Print Class paid a premium for the Goldfish insofar as they purchased products that promised to be of a certain quality and induced a higher payment than would have reasonably been paid otherwise.

176.    Plaintiff Rainwater and members of the New York Fine Print Class were injured because they paid for Goldfish labeled "0g Sugars," which they would not have done had they known the truth that the Goldfish contained sugar.

177.    Plaintiff Rainwater, on behalf of herself and other members of the New York Fine Print Class, seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or $50.00, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**False Advertising Law**
**Violation of New York Gen. Bus. Law § 350**
**(On Behalf of Plaintiff Rainwater and the New York Fine Print Class)**

178.    Plaintiffs hereby incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

179.    By the acts and conduct alleged herein, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

180.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

181.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The…term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual.

182.    Defendants' Goldfish made false, misleading and deceptive statements and representations of fact that were directed to consumers by labeling Goldfish as containing "0g Sugars" when they contain sugar as described herein.

183.    As a result of Goldfish's false, misleading and deceptive "0g Sugars" statements and representations of fact, Plaintiff Rainwater has suffered and continues to suffer economic injury.

184.    Plaintiff Rainwater and members of the New York Fine Print Class were injured because they paid a premium for Goldfish labeled "0g Sugars," which they would not have done had they known the truth that the Goldfish contained sugar.

185.    Plaintiff Rainwater, on behalf of herself and other members of the New York Fine Print Class seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or $500.00, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**Restitution Based on Quasi-Contract/Unjust Enrichment**
**(On Behalf of Plaintiffs and the Classes)**

186.    Plaintiffs hereby incorporate the allegations in the foregoing paragraphs as if fully set forth herein.  Plaintiffs plead this Count in the alternative.

187.    Defendants' conduct in enticing Plaintiffs and the Classes to purchase Goldfish through the use of false and misleading "0g Sugars" labeling as described throughout this Complaint is unlawful because the statements contained on Goldfish are misleading and untrue.  Defendants took monies from Plaintiffs and the Classes for products falsely labeled as containing "0g Sugars," when they contain sugar.  Defendants have been unjustly enriched at the expense of Plaintiffs and the Classes as result of their unlawful conduct alleged herein, thereby unjustly enriching Defendants and creating a quasi-contractual obligation on Defendants to restore these ill-gotten gains to Plaintiffs and the Classes.

188.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the Classes are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Classes and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.    An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Representatives of the Warranty Class and California Fine Print Class, that Plaintiff Cleveland be appointed Representative of the California Concealed Sugar Class, and that Plaintiff Rainwater be appointed Representative of the New York Fine Print Class Representative, and the undersigned counsel be appointed Co-Lead Counsel for the Classes.

B.    Restitution in such amount that Plaintiffs and all members of the Classes paid to purchase Defendants' Goldfish or paid as a premium over alternatives, or restitutionary disgorgement of the profits Defendants obtained from those transactions, for Causes of Action for which they are available.

C.    Compensatory damages for Causes of Action for which they are available.

D.    Statutory damages for Causes of Action for which they are available.

E.    Other statutory penalties for Causes of Action for which they are available.

F.    Punitive Damages for Causes of Action for which they are available.

G.    A declaration and Order enjoining Defendants from labeling and advertising the Goldfish misleadingly, in violation of California's Sherman Food, Drug and Cosmetic Law and other applicable laws and regulations as specified in this Complaint.

H.    An Order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest, and, to the extent available, awarding Plaintiffs' counsel reasonable attorneys' fees and costs.

I.    An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendants as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

J.    Such other and further relief as may be deemed necessary or appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

DATED:  January 18, 2023

**FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**
JOSEPH N. KRAVEC, JR.
WYATT A. LISON

By:____s/Wyatt A. Lison_____
              Wyatt A. Lison

**PEARSON, SIMON & WARSHAW, LLP**
DANIEL L. WARSHAW
MELISSA S. WEINER
MATTHEW A. PEARSON

***ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASSES***